GEORGE R. FINCH ET AL. v. FRITZ KARSTE, WILLIAM LUBY, AND OTTO E. KARSTE.

*Banks and banking—Collection of draft - Negligence—Pleading—*
*Evidence—Practice in Supreme Court—Costs.*

1. An allegation in a declaration in a suit against a bank for its alleged negligent failure to collect a draft drawn by the plaintiffs upon a debtor in favor of a collection agency, and by it indorsed to the bank for collection, that the plaintiffs drew the draft, delivered it to the collection agency, procured its indorsement, and caused it to be sent to the bank for collec-

tion, with a statement of plaintiffs' account, is consistent with the claim that the collection agency merely acted under the direction of the plaintiffs in the transaction.

2. If an agent employs a subagent for his principal, and by his authority, expressed or implied, the subagent is the agent of the principal, and directly responsible to the principal for his conduct.

3. Where the evidence in a suit against a bank for its alleged negligent and fraudulent failure to collect a draft sent to it for collection shows that the bank, with full knowledge of the situation, and being personally interested to an extent involving the entire property of the debtor, disobeyed the instructions of the creditors to return the draft immediately if not paid, and, when directed to hand it to certain attorneys to be put in suit, neglected so to do until it had secured a mortgage, which practically made such action useless, the case should be submitted to the jury, not only upon the question of negligence as commonly understood, *i. e.*, carelessness, but also upon the theory that the delay was intentional, to enable the bank to secure to itself property which the creditors might otherwise have reached.

4. Testimony showing the insolvency of the debtor after the giving of the mortgage, or at least after the seizure of the property thereunder, four days later, and the return of the draft unpaid, in the absence of any proof on the part of the bank that there was an opportunity to collect it, raises a sufficient presumption of loss to go to the jury, subject to the right of the defendant to show that the loss, if any, was due to other causes.

5. The files and records in attachment suits commenced against the debtor after the suit against the bank was instituted, in which bonds to pay any judgments which might be obtained were given, and the property thereby released, were admissible, as tending to rebut the claim of the inability of the plaintiffs to collect their account.

6. An answer by the court to a question of the jury whether they had any jurisdiction to decide whether or not the draft would have been paid if due diligence had been used in presenting it for payment, that they had nothing to do with that question, it being a side issue, is held to have been misleading.

7. The only excuse for incorporating all of the testimony into a bill of exceptions is to enable the Court to determine whether or not the case should have been taken from the jury, and there are comparatively few cases where this question ought to arise.

8. This case is held to be a proper one for the application of Supreme Court Rule No. 59, which provides that whenever any record in a case at law is so prolix as to cause vexation by reason of the multiplicity of frivolous assignments, or by any other abuse, it shall be within the discretion of the Court to grant such costs against the prevailing party, who is responsible for such abuse, as may offset, in whole or in part, the costs to which he would otherwise be entitled; and the judgment is therefore reversed, but without costs.

Error to Gogebic. (Haire, J.) Argued April 14, 1893. Decided July 26, 1893.

Case. Defendants bring error. Reversed. The facts are stated in the opinion.

*Button & Norris,* for appellants, contended:

1. The first count of the declaration shows that the draft was placed in the hands of the Champ Collection Agency for collection, and that the agency was the agent of the plaintiffs, and fails to show any privity between the defendants and the plaintiffs, for the party receiving a collection, although it is to be transmitted to a distant point for actual collection, is the agent of the owner, and the party actually making the collection is the agent of such agent; citing *Simpson v. Waldby,* 63 Mich. 439; *Exchange Bank v. National Bank,* 112 U. S. 276.

2. A bank cannot be required to attend to business outside of business hours, or to exercise more than usual diligence; citing Morse, Banks, § 45*a*; and banking hours are recognized by How. Stat. § 3141, which provides that process shall be served on the officers only during such hours.

3. The draft was returned by the bank to the collection agency, and this closed that transaction, and upon its return the defendants were bound only by the instructions contained in the accompanying letter, "to collect at once and remit," and reasonable care and diligence was all that could be required of them, and they were not required to sue; citing Morse, Banks, § 246; nor were they required to disclose their dealings with the debtors; citing Id. § 294*a*.

4. The best judgment of the bank is all that the principal can require, and in case of doubt, arising from neglect to give specific instructions, if such judgment is exercised the bank will be acquitted, even if its judgment is erroneous; citing

Morse, Banks, § 218; *National Bank v. Merchants' Bank*, 91 U. S, 92; and it is only liable, in any event, for actual damages, and if the draft could not have been collected by the exercise of the utmost diligence there can be no recovery against the bank; citing Mechem, Ag. § 518; *Fox v. Bank*, 73 Iowa, 649.

5. A valid contract can be made by which a collection agent will be simply a transmitter; but, if he is both transmitter and collector, it is different; citing *Hoover v. Wise*, 91 U. S. 308; *Bradstreet v. Everson*, 72 Penn. St. 124; *Sanger v. Dun*, 47 Wis. 615.

*Charles E. Miller*, for plaintiffs, contended:

1. A bank receiving paper for collection is agent for the owner; citing Morse, Banks, § 214.

2. A bank receiving paper for collection contracts to use diligence in the business of the collection, and if it fails to perform this duty with reasonable skill and care it is liable for the resulting damage; citing 2 Amer. & Eng. Enc. Law, 111, and cases cited; Morse, Banks, § 252; *Trinidad Nat'l Bank v. Denver Nat'l Bank*, 4 Dill. 290; *Bank v. Triplett*, 1 Pet. 25; *Wilson v. Smith*, 3 How. 763; *Whitney v. Express Co.*, 104 Mass. 152; *Fabens v. Bank*, 23 Pick. 330; *Bank v. M'Kinster*, 11 Wend. 473; *Bank v. Smith*, 3 Hill, 560; *Tyson v. Bank*, 6 Blackf. 225.

3. A bank, as agent, must do all that the owner would be required to do to protect his rights, and is liable to the owner for failure in such duty; citing Morse, Banks, § 252e; *Davey v. Jones*, 42 N. J. Law, 30; *Beale v. Parrish*, 20 N. Y. 407; *Shipsey v. Bank*, 59 Id. 485; *Phipps v. Bank*, 8 Metc. 79; *State Bank v. Capitol Bank*, 41 Barb. 343.

4. A bank must obey the instructions of its principal; citing *Central Bank v. Cleveland Bank*, 59 Ga. 667; *National Bank v. City Bank*, 103 U. S. 668.

5. It is the duty of an agent to furnish his principal all information he may have affecting the rights of the principal in relation to the subject-matter of the agency; citing Story, Ag. § 208; 1 Amer. & Eng. Enc. Law, 371 (note 4); *Moore v. Thompson*, 9 Phila. 164; *Pierce v. Railway Co.*, 36 Wis. 283; *Rochester v. Levering*, 104 Ind. 562; *Dickson v. Screven*, 23 S. C. 212.

6. An agent will not be allowed to place himself in a position in which his duty and interest conflict; citing 1 Amer. & Eng. Enc. Law, 372, and cases cited; Story, Ag. §§ 210, 214.

HOOKER, C. J. The voluminous record and the great number of assignments of error in this case forbid the consideration of each assignment separately. The case may be conveniently disposed of upon the following questions:

1. Was the declaration such as to permit the introduction of any proof?

2. Did the evidence leave any question of fact for the jury?

3. Specific questions upon the introduction of evidence.

4. Refusals to give defendants' requests to charge.

5. Alleged errors in the charge as given.

### The Declaration.

The plaintiffs, a mercantile firm at St. Paul, Minn., had a claim against Peter Johnson & Co., of Ironwood, Mich. To collect it they drew upon Peter Johnson & Co. in favor of "The Champ Collection Agency." This draft was indorsed as follows, viz.: "Pay to order of Bank of Ironwood, Ironwood, Mich., for collection. [Sgd.] John B. Champ & Co.,"—and forwarded to the bank, which, failing to collect, was instructed to turn the paper over to certain attorneys in the place. Before doing so the bank took a mortgage upon the assets of Peter Johnson & Co. for a large sum owing from said firm to the bank, whereby plaintiffs claim that they were prevented from collecting their debt.

Counsel for defendants objected to the introduction of any evidence under the declaration, claiming, as to the first count:

1. That the draft was placed in the hands of the Champ Collection Agency for collection, and that the agency was the agent of the plaintiffs, and that privity between the plaintiffs and defendants is not shown.

2. That it does not show that the account was lost to the plaintiffs by the alleged neglect of the defendants.

3. That it does not show that the attorneys could have collected or secured the debt if it had been turned over to them.

4. That it does not show that the plaintiffs were unaware of the insolvency of Peter Johnson & Co., and that the loss, if any, was attributable entirely to the action of the defendants. In other words, it does not negative the negligence of the plaintiffs.

As to the second count it was claimed:

1. That it fails to show defendants to be the plaintiffs' agents.

2. That it does not, by express words or necessary implication, negative the placing of the draft in the hands of the collection agency for collection, and that the defendants were acting as the agent of the collection agency, and not of the plaintiffs.

3. That it fails to negative knowledge by the plaintiffs of the insolvency of Peter Johnson & Co.

4. That it does not show that plaintiffs were without fault or negligence.

5. That it fails to show that Peter Johnson & Co. were indebted to the plaintiffs.

This objection was overruled, and an exception taken.

The first point is based upon the proposition that, where a claim is sought to be collected through a bank or collection agency, which selects its own agencies, the bank or collection agency is liable for loss resulting from a failure through the neglect of itself or its agents, and that the redress of the owner is against the bank or agency, and not against the subagent or correspondent of the bank or agency. Cases are cited to sustain this proposition. The first count of the declaration, however, alleges that the plaintiffs drew the draft, delivered it to the Champ Collection Agency, procured its indorsement, and "caused said draft, so indorsed, to be sent by mail, together with a statement of their account, * * * to the said Bank of Ironwood, for collection." This allegation is consistent with the claim that the Champ Collection Agency was merely acting under the direction of the plaintiffs.

Whatever confusion may have arisen over the relations between the creditor and banks, local and foreign, where

paper is left with the former by which it is transmitted to the latter, there is no uncertainty about the rule that a collection agency which assumes to collect a debt is responsible for the negligence of *its* employés, resident or foreign. Possibly, under some circumstances, both may be answerable to the creditor. But, whether this is so or not, the general rule is well settled that—

" If an agent employs a subagent for his principal, and by his authority, expressed or implied, then the subagent is the agent of the principal, and is directly responsible to the principal for his conduct.   *   *   *   But if the agent, having undertaken to transact the business of his principal, employs a subagent on his own account, to assist him,   *   *   *   there is no privity between such subagent and the principal." Mechem, Ag. §§ 197, 513, and cases cited.

See, also, *Montgomery County Bank v. Albany City Bank,* 7 N. Y. 459; *Bank v. Smith,* 3 Hill, 560; *Wilson v. Smith,* 3 How. 763.

It is competent to employ an agent through another agent, and this declaration is so framed as to permit the introduction of such proof. It does not allege that the Champ Collection Agency, having this claim to collect, employed the defendants as its agents. It will bear no such construction, and would not admit of proof upon such theory.

Counsel contended, further, that this count does not charge the loss upon defendants' failure to perform their duties. After alleging that it was the duty of defendants to use due and reasonable diligence, etc., the count proceeds:

" Yet said defendants, '   *   *   *   well knowing that if they had been prompt and diligent they could have collected said account,   *   *   *   negligently and carelessly and fraudulently and corruptly retained said draft in their possession, without using any diligence or care to collect the same,   *   *   *   until October 25, 1890,

when said plaintiffs, by their agents, notified said defendants, by telegram, * * * to deliver the same at once to Messrs. Hammond & Kissane, attorneys, * * * to collect or secure the same; * * * but the said defendants * * * carelessly, negligently, fraudulently, and corruptly neglected and refused to turn over said draft, * * * until * * * after said firm of Peter Johnson & Co. had become insolvent, * * * so that it *became and was* totally *impossible* to collect the claim of said plaintiffs, * * * *and by reason of the carelessness, negligence, fraud, and corruption* of said defendants the plaintiffs *have lost all opportunity to collect* said account, and have been greatly injured," etc.

In view of the foregoing we are at a loss to understand how the claim can be seriously made that this count does not show that "the failure of the defendants to perform these alleged duties resulted in any loss to the plaintiffs." This allegation was sufficiently specific to admit of proof that the claim could have been secured had it been promptly delivered to the attorneys, and there was no necessity of negativing plaintiffs' knowledge of Johnson & Co.'s impending failure, or their own negligence. The count also charges fraud upon the part of the defendants in holding plaintiffs' claim until they could secure their own, and in declining to perform their duties, or give plaintiffs information of the situation, until they could secure themselves to the exclusion of the plaintiffs.

The objections to the second count are no better, though, if the first count warranted the introduction of the proof, there is no necessity for discussing the second. This disposes of the first six assignments of error, and of the first six and twenty-fourth requests to charge.

### The Evidence.

Many of the assignments of error are based upon the proposition that the evidence failed to make a *prima facie* case upon the following essentials:

1. Privity between the parties.
2. Negligence on the part of the defendants.

3. Loss resulting therefrom.

The question of privity has been discussed in connection with the declaration, and we may dismiss it with the remark that there was some evidence tending to show that the Champ Collection Agency acted for the plaintiffs in sending the draft to the bank selected by the plaintiffs, and at their direction, subsequently communicating plaintiffs' orders, without assuming any other or greater responsibility in the premises; in other words, that their employment was for transmission, as contradistinguished from collection, of the paper. The weight to be given to such evidence is not a subject for consideration here. If there was any such evidence, the question was for the jury.

The question of negligence also was a proper one for the jury. The evidence shows that the defendants, with full knowledge of the situation, and being personally interested to an extent that involved the entire property of Johnson & Co., disobeyed their instructions to return the draft immediately if not paid; and when directed to hand the claim to attorneys for suit they neglected it until they had secured a mortgage, which practically made it useless to do so. The claim of counsel that these defendants owed no duty to plaintiffs after what they chose to call their "banking hours" is an insufficient excuse for not acting at once, and we think there was evidence to go to the jury, not only upon the question of negligence as commonly understood, *i. e.*, carelessness, but also upon the theory that the delay was intentional, to enable defendants to secure to themselves property which plaintiffs might otherwise have reached.

In this connection we may conveniently digress from the point under discussion to say that the evidence of the relations of defendant Otto E. Karste to Johnson & Co. and to Mrs. Healy[1], the agreement to pay certain debts, of

---

[1] A member of the firm of Peter Johnson & Co.

which plaintiffs' claim seems not to have been one, the contracts between Mrs. Healy and other members of the concern, and Karste's connection therewith, the subsequent payment to Adler and others of their claims, were circumstances properly admitted to shed light upon the conduct of defendants.

Again, upon the question of plaintiffs' loss, the testimony showed Johnson & Co.'s insolvency after the giving of the mortgages,—at least after the taking of the property under them, four days later,—and the return of the claim unpaid. This, in the absence of any proof on the part of defendants that there was an opportunity to collect this debt, raised sufficient inference of loss to go to the jury. It was subject to the right of defendants to show that the loss, if any, was due to other causes, but the question was for the jury.

Counsel contend that the fact that the draft was indorsed "John B. Champ & Co.," instead of "Champ Collection Agency," should have precluded a recovery by plaintiffs. Their own statement of the case practically shows that the indorsement was made by the collection agency, and there is no room to doubt that the different names represented the same concern. But the point is without force for another reason. That draft, whether properly indorsed or not, was sent, with the account upon which it was drawn, to the defendants. Their duty was to collect or return, and later to hand to an attorney. They cannot now shelter themselves behind this question over the indorsement, as it in no wise affected their duty or liability.

The refusal of the trial court to compel plaintiffs to elect as to which count they would recover upon was a matter of discretion, with which we see no occasion to interfere. *Cook v. Perry*, 43 Mich. 623.

*Questions Arising upon the Introduction of Evidence.*

Elbert A. Young was called as a witness on behalf of the plaintiffs, and testified to the transaction between the plaintiffs and the collection agency. He was asked:

"*Q.* Now, as I understand you, Mr. Young, when this draft was put in the hands of the Champ Collection Agency, it was to be transmitted by them to a bank in Ironwood for collection?

"*A.* It was.

"*Q.* In other words, the draft was not to be, as I understand you, collected by an agent of the collection agency in the first instance?

"*A.* Not unless it was impossible to collect it through the bank."

This last answer is objected to as involving a conclusion of law. We think it meant no more than that the arrangement was that this paper was not to be turned over to the attorney or agent of the collection agency if it could be collected through the bank to which it was sent. Doubtless the jury understood it so, and it was a question of fact.

A letter from the Champ Collection Agency to Hammond & Kissane was offered in evidence by the counsel for defendants, and was admitted upon the condition that a preceding letter, to which it referred, should be offered with it. Both were admissible as showing what plaintiffs did in the way of attempting to secure this claim. No injury appears to have been done defendants by the introduction of the earlier letter.

The files and records of the circuit court in a number of cases in attachment against Peter Johnson & Co. were offered in evidence. The record says that these would have shown that "subsequent to the cause of action in this suit a large number of attachments were sued out against Peter Johnson & Co., and levied upon certain property, and that a bond was given in each case

for the release of the property, conditioned upon the payment of any judgments to be taken in said causes." Counsel stated that these were offered to show that other creditors had secured their claims. This was excluded upon the ground that the cases were commenced " after the cause of action in this case arose," whatever that statement may mean. Plaintiffs' brief implies that it was after this action was begun, but the record does not say so, and we are left to conjecture to know what is meant by the expression " after the cause of action arose." But, whatever may be the meaning, we think this testimony was admissible. Had those actions gone to judgment, and the money been made by a sale of the property attached, it would have implied that defendants had property subject to levy, and that by due diligence plaintiffs might have collected their debt. The fact that when the property was attached it was at once secured by bonds in seven or eight cases is a fact that has some weight; and, though the attachment was made after this action was commenced, it tended to show that when Johnson & Co. were pushed claims could be collected, even at that late day.

We think the questions of law raised by the requests are covered by the preceding discussion.

### The Charge.

The jury returned for instruction, and said to the court:

" There is another point which has arisen, and that is, if the bank had used due diligence in presenting that draft, if there is a doubt in our minds whether Johnson & Co. could have paid. In that case some of us might think that if they had presented the draft it would have been paid, and others of us might think that if they had presented the draft it might not have been paid. Now, I ask the question, has this jury any jurisdiction to decide whether the draft would have been paid or not, or whether we haven't anything to do with that?"

To this question the court made answer: "I don't think you have anything to do with that; that is a side issue."

It is not for us to decide what constituted the negligence found by the jury, or what they found to be the proof that plaintiffs lost their claim through defendants' fault. If the jury could have found that Johnson & Co. were *unable* to pay the draft, not only at all times after but at the time of presentation, or the time that it should have been presented, as well, they could not properly charge the loss to defendants' negligence. We can see why this question might not be conclusive, but, on the other hand, we can see how it might be, in the minds of some; and although we think the charge carefully kept in sight and distinguished the principles governing the case, we are reluctantly convinced that this answer to the juror was misleading.

The record in this case contains 750 folios. It contains all of the testimony in the case. The only excuse for incorporating all of the testimony in a bill of exceptions is to enable this Court to determine whether or not the case should have been taken from the jury. There are comparatively few cases where such a question ought to arise. In this case it was contended:

1. That the proof failed to show that the defendants were plaintiffs' agents.
2. That it failed to show negligence.
3. That it failed to show a resulting loss.

Upon each of these, unless it be the first, it is plain that a question of fact arose; and as to the first, which was the main question in the case, if counsel desired the opinion of the Court, a few pages would have sufficed for all of the testimony upon the subject.

Again, we find in the record 54 assignments of error, one of which raises a question upon each of 34 requests to charge, thus practically aggregating 87 assignments of

error. These requests to charge seem to cover every proposition that the ingenuity of counsel could suggest, and each is made the subject of an assignment of error, though many of them were given in substance. But the assignments upon the charge as given are more objectionable, if possible, than that upon the requests. Errors are alleged upon the charge, sentence by sentence, consecutively, and very little of the charge is omitted. Assignments should clearly raise the questions of law to be considered. Supreme Court Rule No. 12.

By the course taken both counsel and the Court are put to unnecessary labor. We think it a proper case for the application of Rule 59.

The judgment will therefore be reversed, but without costs, and a new trial ordered.

McGRATH, LONG, and MONTGOMERY, JJ., concurred. GRANT J., did not sit.