# Northwestern Iron & Metal Co. v. The National Bank of Illinois.

1. NEGOTIABLE INSTRUMENTS—*Time Allowed Payee to Present Check.* —Where a payee, to whom a check is delivered by the drawer, receives it in the place where the bank on which it is drawn is located, he may preserve recourse against the drawer, by presenting it for payment at any time before the close of banking hours on the next day, and if in the meantime the bank fails, the loss will be the drawer's, and in this respect there is no difference between a certified and an uncertified check. The fact that the holder of the check has good ground for believing that the bank upon which it is drawn is in a precarious condition and likely to fail, does not create an exception to the rule.

**Assumpsit,** on a check. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the March term, 1897. Affirmed. Opinion filed May 24, 1897.

## STATEMENT OF THE CASE.

This was an action at law on a certified check for seven hundred and forty-seven dollars and thirty cents ($747.30),

dated June 2, 1893, drawn by the appellant on Messrs. Herman Schaffner & Company, and payable to order of appellee.

This check was given to the appellee by appellant under the following circumstances:

On Friday, June 2, 1893, appellant's book-keeper, Bernstein, having received notice that a Peoria draft, drawn on appellant for $747.30, was in the hands of appellee for collection, had this check (for the exact amount of the draft) drawn on appellant's account at Schaffner & Company's, and after getting the same certified by said bankers, took the check to appellee's banking house between 2:00 and 2:15 on the afternoon of said June 2d, and delivered the same to appellee in payment of the Peoria draft, which draft, after being stamped "paid" by appellee, was delivered to Bernstein. Bernstein made a deposit of some seven hundred dollars with Schaffner & Co., on behalf of appellant, just before getting the check certified by them, and there was a sufficient amount to the credit of appellant to pay the check.

Schaffner & Co. paid any checks drawn on them that were presented before close of business on said June 2d.

On the morning of Saturday, June 3d, Schaffner & Company made a voluntary assignment for the benefit of creditors. No notice of the non-payment of the check by Schaffner & Company was given appellant until more than a month after its date, and then counsel of appellee wrote appellant a letter calling the matter to its attention, and asking appellant to call and see the writer of the letter about it. Appellant refused to pay the check, and this suit was instituted June 20, 1894.

For some time prior to the date of the transaction in question, appellee had been "clearing" for Schaffner & Company—that is, Schaffner & Company were not members of the Chicago Clearing House, and the appellee had acted in their behalf, paying for Schaffner & Company all checks drawn on them and presented through the clearing house. Schaffner & Company had, during such period, kept

a regular deposit account with appellee, and the custom was for Schaffner & Company each day to give appellee a check drawn on their said account in payment of the aggregate amount of such clearings paid by appellee that day.

It appears that on said June 2, 1893, appellee's officers received notice, as was customary, at about 11 o'clock in the morning, as to returns from the clearing house, appellee's clerks bringing back at that time all the checks which appellee had there paid, including those drawn on Schaffner & Company; that the aggregate amount of checks drawn on Schaffner & Company, so paid by appellee that day, was $163,504.94; that a clerk of Schaffner & Company came over and got these checks, and Schaffner & Company gave appellee a check drawn on its deposit account for the amount so paid; that the giving of this check overdrew said deposit account of Schaffner & Company at that time—midday or one o'clock—in the amount of some $150,000 or $160,000; that Schaffner & Company made deposits to the credit of its said account that afternoon; that said deposits consisted in part of three certain checks drawn by Schaffner & Company, one being for $240,000, and drawn on Merchants Loan & Trust Company, Chicago; one being for $30,000 on the same bank, and one being for $90,000 on the American Exchange Bank, New York City; that appellee's officers knew these checks were not good at the time they took them; that Schaffner & Company were given credit on said June 2d by appellee for the amount of said checks so deposited; that during that afternoon Schaffner & Company also made three other deposits with appellee of the respective amounts of $2,333.04, $2,667.11 and $6,704.15, said deposits consisting in part of cash; and that it appeared from the books of appellee that at the close of business on June 2, 1893, there was a book balance of $11,127 in favor of Schaffner & Company.

After banking hours on June 2d, appellee received from Schaffner & Company collaterals to secure any claims it might have against them, which, together with those before held, aggregated so that the total security held by appellee

from Herman Schaffner & Company, at the time the latter failed, was $269,482.99, upon which, at the time of the trial of this case, appellee had collected $232,542.39. At the time of their failure, Herman Schaffner & Company owed appellee $320,006.37 on overdraft.

The amount realized from the securities was credited upon the overdraft, and was not sufficient for that purpose. At the time of the trial, Herman Schaffner & Company were still indebted to appellee.

Appellee on June 3d sent this check over to the clearing house, and it was stamped, "Pay through Chicago Clearing House to National Bank of Illinois."

The appellant contends, *inter alia*, that prior to the close of business on June 2d, appellee had notice that Schaffner & Company were in such financial difficulty as required appellee to present the certified check for payment on that day, and that its failure to do so was a lack of diligence that rendered it liable for the amount for which the check called; that the question of whether appellee was negligent should have been submitted to the jury, and that it was error to instruct the jury to find for the plaintiff.

ALDRICH, REED, FOSTER & ALLEN, attorneys for appellant.

MORAN, KRAUS & MAYER, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

Where a payee, to whom a check is delivered by the drawer, receives it in the place where the bank on which it is drawn is located, he may preserve recourse against the drawer by presenting it for payment at any time before the close of banking hours on the next day, and if in the meantime the bank fails, the loss will be the drawer's; and in this respect there is no distinction between the certified and an uncertified check. Bickford v. First Nat. Bank, 42 Ill. 238; Daniel on Negotiable Instruments, 4th Ed., Vol. 2, Sec.

1590; Tiedeman on Commercial Paper, Sec. 443; Thompson on Bills of Exchange, p. 119; Story's Bills of Exchange, 4th Ed., Sec. 471; Parsons on Notes and Bills, Vol. 1, p. 466, 477.

This is not disputed by appellant. What it contends is, that to this rule there is an exception, namely : That if the holder of the check has good ground for knowing that the bank upon which it is drawn is in a precarious condition, and likely to fail, he is bound to present the check at once.

The importance of the contention of appellant is manifest, for it in effect is, that the holder of a check can not rely upon the rule that he has during the banking hours of the next day after its reception within which to present the check for payment, but that it is a question of fact to be submitted to a jury, whether, on account of some knowledge or notice that came to him, he was not bound to present the check for payment at once, and by a failure so to do, has lost his recourse against the drawer.

The question is not here presented for the first time. In Schofield v. Hananer, 9 Heisk. (Tenn.), 171, the trial court had instructed the jury substantially in accordance with the contention of appellant in the present case. On account of such instruction the judgment of the lower court was reversed, the Supreme Court saying that the drawer of a check issues it with the implied understanding that it need not be presented for payment except within the business hours of the next day after its issuance, and the holder takes it with the same understanding. That during this time, therefore, no *laches* can be imputed to the holder unless he received it with a different contract.

In Story on Bills of Exchange, 4th Ed., Sec. 471, the rule in respect to inland bills of exchange (checks) drawn in a town or city on a drawee in the same town or city, and payable to a third person, or his order on demand, is stated to be that in no case is it indispensable that the payee or other holder lay aside all other business to make a demand of payment on the day on which he receives the bill, any more than it is for the holder to give notice of the dishonor of a

bill on the day of its dishonor, to the other parties liable. Our attention has been called to no case in which there has been a holding in accordance with the contention of appellant. There is, in Bank v. Alexander, 84 N. C. 30, in the opinion of the court, a remark as if the court were of the opinion that if the holder of a check has reasonable ground for thinking the bank upon which it is drawn unsafe, he should present the check for payment at once, but there was no such holding, nor even a declaration of opinion that such is the law.

The remark in Morse on Banks and Banking, Vol. 2, 421, has for its support merely the remark made in Bank v. Alexander, 84 N. C. 30.

The case of Finch v. Karste, 56 N. W. Rep. 123, cited by appellant is that of the obligation of a party to whom the draft was forwarded for collection, in which the party, occupying a fiduciary relation to the plaintiff, proceeded to secure its own claim against the drawee before presenting for payment the draft it held for collection.

There was no evidence tending to show that appellee has received payment of this check from Schaffner & Company; on the contrary, it appears that Schaffner & Company, at the time of their failure, were indebted to appellee in the sum of about $100,000 more than the entire value of all appellee has received, and of all the security it holds; nor does it appear that appellant has suffered any loss from the failure of appellee to give notice at once of the non-payment of the check, while notice was given in time to enable appellee to file its claim against the insolvent firm of Schaffner & Company.

Appellant, for its own purposes, instead of presenting its check to Schaffner & Company for payment, had them certify it, and then gave it to appellee in payment of its, appellant's, obligation. When appellant did this, it knew that appellee had all of the business hours of the next day within which to present such check to Schaffner & Company for payment. It did not leave the check with appellee in trust to collect and hold the proceeds thereof for its, appellant's,

use, but left the same in payment of its obligations, knowing that if Schaffner & Company failed before the close of business on the next day, and before said check had been presented for payment, there would have been no payment of its, appellant's, obligation, and that it would be bound to respond to appellee for the amount of the check.

We express no opinion upon the question whether appellee had reasonable ground to apprehend the failure of Schaffner & Company, as we think it important that a decision should be made upon the contention of appellant that the holder of a check must present it for payment at once, or run the risk of having to submit to a jury the question of whether he had not such notice of the financial insecurity of the drawee as charged him with the duty of hastening with all speed to secure payment.

The judgment of the Superior Court is affirmed.