## MARY L. GROSCUP vs. SAMUEL K. P. DOWNEY, USE, ETC.

*Agency—Delegation of Authority—Action by Real Estate Broker for Commissions—Instructions to jury—Usage as to Real Estate Broker's Commissions.*

The general rule is that an agent has no power to delegate his authority to another or to employ a sub-agent unless there be an express or implied authority to do so.

If the agency is to be inferred from the conduct or relation of the parties to each other, the existence of the agency and the nature and extent of the agent's power are questions of fact to be found by the jury from the evidence under instructions from the Court.

When a husband has charge of his wife's property with an authority to sell the same, he is not *ipso facto* authorized to employ a sub-agent so as to render his wife liable for the compensation of the sub-agent in effecting a sale, when at the time it was made, the wife did not know of the sub-agent's employment, and therefore did not ratify the same.

A real estate broker found and introduced to the owner of a house who wished to sell the same a person who at first refused to purchase the prop-

·erty· but who did become the purchaser two or three months afterwards. In an action by the broker to recover commissions, a prayer offered by the defendant is erroneous which instructs the jury that if the purchaser notified the plaintiff that he did not intend to purchase the property, and at the time of such refusal did not intend to purchase, then the verdict must be for the defendant.

A prayer is erroneous which assumes the existence of a general usage affecting the contract sued on instead of submitting to the jury the question of the existence of such usage.

The husband of a woman who owned the leasehold interest in a house was her agent to sell the same but there was no evidence that his authority was in writing or that he was authorized to employ a sub-agent. He requested plaintiff, a broker, to procure a purchaser and plaintiff called the attention of a customer to the house who afterwards bought the same in fee. In an action by the broker against the married woman to recover commissions there was evidence of a usage to the effect that when the owner of leasehold property authorizes an agent to sell the property in fee and causes it to be conveyed to the purchaser in fee, such owner is liable to the agent for commissions on the full amount of the sale. A prayer offered by the plaintiff instructed the jury that if the defendant owned the leasehold property and her husband was her agent for the sale of the same and employed plaintiff to procure a purchaser of the property in fee, and that the property was sold by the defendant in fee to the purchaser procured by plaintiff, then the plaintiff is entitled to recover the customary compensation. *Held*, that this instruction is erroneous because it assumes that defendant's husband had authority to employ plaintiff as sub-agent, and that a sale by the defendant to the purchaser procured by the sub-agent was a ratification of his employment, although there was no proof that the defendant knew, when making the sale, that the purchaser had been procured by the plaintiff, and also that the instruction is erroneous because it does not require the jury to find that the alleged usage, which entitled the plaintiff to commissions on the full value of the property, existed as a general and notorious custom of which the defendant must be presumed to have had knowledge.

. *Decided February 16th, 1907.*

Appeal from the Court of Common Pleas (DOBLER, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*Horton S. Smith* (with whom was *Wm. R. Barnes* on the brief), for the appellant.

*S. S. Field*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This suit was brought in the Court of Common Pleas of Baltimore City to recover a commission alleged to have been earned by the equitable plaintiff, Samuel K. P. Downey, by procuring a purchaser for a house owned by the defendant Mary L. Groscup.    The plaintiff recovered a judgment for the amount of the commission claimed by him and the defendant appealed.

There are no questions of pleading or of the admissibility of evidence presented by the record which contains but two bills of exceptions both of which relate to the Court's ruling on the prayers.    The first exception was taken to the refusal of the Court to grant the defendant's prayer, offered at the close of the plaintiff's case, to take the case from the jury for want of legally sufficient evidence under the pleadings to justify a verdict for the plaintiff.    The second exception was taken to the Court's action on the prayers presented at the close of the entire case.

The testimony of the different witnesses displays much difference of recollection and some flat contradictions but the record contains evidence tending to prove the following facts. The appellant, Mrs. Groscup, owned three lots of ground in Baltimore City, known as No. 2915-17-19 Calvert street, upon each one of which a house was being built in the early part of the year 1905.    William Groscup, the husband of the appellant, had charge and management both of the erection of the houses and the sale of the property.    The fee simple estate in the lots did not belong to Mrs. Groscup but she owned a leasehold estate in each one of them with the right to purchase the fee in it.    A month or two before the completion of the houses Mr. Groscup requested or authorized the equitable plaintiff Downey, who was a licensed real estate broker, to sell the houses for him at $8,500 each in fee.    Mr. Downey had a customer, Mrs. Ella Mahon, who desired to purchase a residence in that neighborhood and he informed Mr. Groscup of that fact and promised to see her.    He saw Mrs. Mahon the next day and called her attention to the Groscup houses

and made an appointment with her to meet Mr. Groscup at
the houses at four o'clock that afternoon.    He then informed
Mr. Groscup of the appointment and the latter met Mrs.
Mahon according to the appointment at the houses and showed
them to her and offered to sell her one of them.

About two months afterwards Mrs. Mahon bought the
house No. 2915 Calvert street from Mrs. Groscup for $8,700.
in fee, taking a deed therefor from her and her husband.    The
owner of the reversion in fee united in the deed, at Groscup's
request, upon being paid out of the purchase money the value
of the reversion.

There is also evidence tending to prove that the customary
commission of real estate agents in Baltimore City for effect-
ing a sale of real estate is two and a half per cent upon the
price paid for the property, and that when a leaseholder autho-
rizes the agent to sell the property in fee and procures it to be
conveyed in fee it is customary for his principal to pay him
the usual commission on the full amount of the sale.    There
is evidence, on behalf of the defendant, tending to prove that
the negotiations for the sale of the property instituted through
the agency of Downey were abandoned and that the sale was
in fact the result of subsequent and independent bargainings
between Mr. Groscup and Mrs. Mahon.    Some of the most
vital of the alleged facts which the evidence on behalf of the
plaintiff tended to prove were flatly denied by the defendant's
witnesses, but the weight of the evidence was a question for
the jury.

As both bills of exceptions relate to the Court's action on
the prayers they can be considered together.

At the close of the whole testimony the plaintiff offered one
prayer which the Court granted.    The defendant offered four
prayers of which the first was a renewal of his prayer asking
the Court to take the case from the jury.    The Court granted
the defendant's second and third prayers after modifying the
second one and rejected her first and fourth prayers.    The
plaintiff's first prayer is as follows:

"If the jury find from the evidence that the defendant was

the owner of the leasehold property known as 2915 N. Cal-
vert street, and that the defendant's husband, William Gros-
cup, was her agent in charge of the said property and for the
sale of the same and that the defendant's said agent employed
the plaintiff, Samuel K. P. Downey, to procure a purchaser
for the said property in fee, and that the said property was
sold by the defendant or her said agent to said purchaser pro-
cured by the said plaintiff for $8,700 in fee, then the plaintiff
is entitled to recover such compensation as the jury may find
usual and customary."

The propositions embraced in this prayer, with two excep-
tions, are the same as those favorably passed upon by this
Court in the plaintiff's prayers in *Jones* v. *Adler*, 34 Md. 442,
and *Blake* v. *Stump*, 73 Md. 162–3.    The two special features
of the present prayer relate to the authority of the defend-
ant's husband acting as her agent to bind her by the employ-
ment of another agent to sell the property; and to the liability
of the owner of the leasehold estate in the property sold for
the payment of a broker's commission upon the entire price
for which the property was sold in fee.

This prayer in effect instructs the jury as matter of law that
William Groscup, if found by them to have been the defend-
ant's "agent in charge of said property and for the sale of the
same," had the authority as such agent to employ another
person to procure a purchaser for it and thus make the de-
fendant liable to such person for compensation if the property
was sold to the purchaser procured by him.    That instruction
involved a two-fold error.    In the first place an agent of the
character described in the prayer has not as matter of law
power to delegate his authority to another person or employ
a sub-agent.    In the second place a sale by the defendant to
a purchaser procured by the sub-agent would not ratify his
employment or make her liable to him for compensation un-
less she knew when she made the sale that the purchaser had
been procured by him.

The law is firmly settled that ordinarily an agent has no
power to delegate his authority to another or to employ a

sub-agent in the absence of an express or implied authority to do so from his principal. This is especially true where the execution of the power conferred upon the agent involves the exercise of judgment or skill. *Mechem on Agency*, sec. 185; *Clark & Skyles on Agency*, p. 767, *et seq.*; *Wilson* v. *York, &c., R. R. Co.*, 11 G. &. J. 74. The power to an agent to delegate his authority may be implied from a variety of circumstances, as where it is shown that the principal contemplated or knew that the agent intended to delegate his authority, or where such delegation is authorized by custom, usage, the course of trade or by necessity or where the acts to be performed are merely mechanical or ministerial. *Clark & Skyles on Agency*, p. 770; *Mechem on Agency*, sec. 184 to 196.

If the authority of the agent is conferred on him by a written instrument the construction of the instrument and the determination of the nature and extent of the agent's power are matters of law for the Court. If the agency grows out of transactions *in pais* or is to be inferred from the conduct or relation of the parties to each other, the existence of the agency and the nature and extent of the agent's powers are questions of fact to be found by the jury from the evidence before them under proper instructions from the Court.

In the case before us there is no evidence that Mr. Groscup's agency to manage and sell the property was created by a written instrument or that any express authority was conferred on him to employ a sub-agent to make the sale. If the plaintiff desired an instruction from the Court that the jury might imply the existence of such a power in Mr. Groscup as agent, from any matters testified to by the witnesses in the case, he should have presented an appropriate prayer instructing the jury what facts or circumstances, if found by them from the evidence, would justify them in finding that the agent had the power.

The plaintiff sought to hold the defendant who owned the leasehold in the property liable for commissions based on the amount produced by the sale of the entire fee simple estate upon the ground of the existence of a custom to that effect in the city

of Baltimore and, as we have already said, there is evidence in the record tending to prove such a custom but the plaintiff's prayer does not require the jury to find the existence of such a custom, as we think it should have done. In *Blake* v. *Stump*, 73 Md. 160, we held that, in the absence of a special contract, a real estate broker who sells a leasehold is not entitled to the same commissions as if he had sold the fee, and that a rule of the Real Estate Exchange allowing commissions on the full value of the fee under such circumstances would not control the situation unless it were proven that the rule was of such public notoriety that the defendant must be presumed to have had knowlege of it and therefore to have dealt expecting to be bound by it. As the plaintiff's prayer did not instruct the jury to allow him compensation upon a *quantum meruit*, but relied upon usage and custom to fix the amount to which he was entitled, it should have required the jury to find the existence of a custom, regulating the compensation of agents making sales like the one before us, of the uniform and notorious character required by law to cause it to enter into and become a part of all contracts made within the sphere of its operation. The prayer assumes the existence of such a custom.

We find no error in the rejection by the Court of the defendant's first prayer as we regard the evidence in the record as legally sufficient to send the case to the jury. Nor does any error appear in the rejection of her fourth prayer which asserted that she was relieved from liability to the plaintiff if the jury found that Mrs. Mahon notified the plaintiff that she did not intend to purchase the house offered her by him and that she then in fact did not intend to purchase it. The prayer is defective in that it entirely fails to mention or notice the fact that Mrs. Mahon actually purchased the property from the defendant within two or three months after it was offered to her by the plaintiff.

For the error in granting the plaintiff's prayer the judgment must be reversed and the case remanded for a new trial.

*Judgment reversed with costs and case remanded for a new trial.*