F. W. A. POPPE v. CLINTON C. BOWLER AND OTHERS.[1]

November 6, 1931.

No. 28,584.

[1]Reported in 238 N. W. 890.

*Wright & Wright, Stinchfield, Mackall, Crounse, McNally & Moore, D. C. Edwards,* and *Donald A. Holmes,* for appellants.

*Leonard, Street & Deinard,* for respondent Poppe.

HOLT, J.

In this action to recover damages for fraud and deceit in a real estate deal, plaintiff was by the judgment awarded $6,000 against appellants and defendant Swansen. Appellants' motion for a new trial was denied, and the judgment entered from which they appeal.

The appellants, husband and wife, as joint tenants, owned two lots on Como avenue and Twenty-second street southeast, Minneapolis, subject to two mortgages; one of $11,000, upon which on June 5, 1925, there was $9,772.04 unpaid, and one of $2,000 was of record unsatisfied until after the transaction presently to be stated.

On the lots were a duplex dwelling and a store building with apartments above the stores. The appellant George D. Seaborn had listed the property, hereinafter referred to as the Como property, for sale with the H. W. White Investment Company, hereinafter called the White company, that company being given the exclusive agency to sell for the price of $19,000, which price, less commission of $1,000, would net owners $18,000. Prior to June 3, 1925, plaintiff owned a ten-acre farm near Hopkins on which there was a mortgage of $4,000. This farm will hereinafter be referred to as the Hopkins property.

Defendant Swansen was a real estate and rental agent in Minneapolis and had an office adjoining one occupied by the father of defendant Clinton C. Bowler. Swansen learned from some source that plaintiff desired to dispose of his Hopkins farm and also that

the White company had the agency for the sale of the Como property of appellants. On May 25, 1925, the White company, as agent for appellants, entered into an earnest money contract with C. C. Bowler to convey the Como property to him for $19,000, $100 being then paid, $2,900 to be paid on or before July 1, 1925, upon delivery of a contract for a deed to the property, the balance by assuming mortgage in the amount of $10,200 and making monthly payments of $50 until $5,800 was paid. Swansen signed Bowler's name to this agreement and paid the $100 earnest money. It was so conclusively proved that Bowler served as a mere conduit of title or interest at the request of Swansen and had no personal interest in the documents signed that the action was, during the trial, dismissed as to him without objection of any party thereto.

By contract dated June 2, 1925, between plaintiff and Bowler, the former agreed to exchange his Hopkins property for the Como property, the first to be subject to a mortgage of $4,000 and the latter subject to a mortgage of "about $10,000 and a contract for deed of about $6,000, * * * total incumbrance will not exceed $16,000." Swansen signed Bowler's name to this contract also. Up to this time Swansen had never met either of appellants nor had he had any communication with them, so far as the oral testimony goes. And there are no facts or circumstances from which a contrary inference may be drawn.

By contract dated June 5, 1925, Clinton C. Bowler assigned the contract of June 2 to plaintiff. This was signed and acknowledged by Bowler before Swansen as notary. The testimony is clear that on June 5 Swansen, Bowler, and Seaborn met in the office of the White company. White and Seaborn both testify to that being the first time the two met. Plaintiff was not there but testified that he delivered the deed to the Hopkins property to Swansen at his office on June 3, 1925. According to the former, the name of the grantee was left blank; but according to the latter, Bowler was the grantee then named in the deed. Plaintiff also testified that he told Swansen to hold the deed until he got the deed to the Como property, such deed to be subject to two mortgages, one for $8,000

and one for $4,000, which deed Swansen agreed to file for record. It was conclusively proved that Swansen, with his own money or money borrowed by him, paid to the White company, the agent of appellants, the cash consideration which passed in the sale of the Como property. The company, in accounting to Seaborns for the sale, charged them $1,000 as commission, reduced the first mortgage to $9,772.04, the second mortgage had been satisfied, and the contract for deed provided for monthly payments of $50 until $6,227.96 with interest was fully paid. This made up the purchase price of $19,000. The employe of the White company who had the actual contact with Swansen was no longer with the company, was living on the west coast, and was not a witness. Mr. H. W. White testified that although the account rendered the Seaborns showed the commission charged them was $1,000, the company in fact got only $800, which after two small disbursements was divided between the men in the company's employ who made the sale, the manager of the sales department, and the company, one-third each. He could not account for the $200.

From this circumstance of the company's accounting and bookkeeping respondent argues that there is an inference that appellants paid Swansen a commission of $200 and hence he was their agent. The only other items of evidence upon which plaintiff relies to prove agency is that Swansen, in his first interview with plaintiff's daughter with reference to the Como property, stated, as she testified, that "he had been commissioned to trade some property southeast." And that plaintiff testified that Swansen told him that he received $300 commission from Seaborn and would expect the same from plaintiff, but they compromised on $200, which he paid Swansen. Swansen claims, and appears corroborated by documentary evidence, that the deal with plaintiff was closed in the former's office on June 8; and on the next day he recorded for plaintiff the contract for deed to the Como property and the assignment thereof to plaintiff. Swansen continued for some months to collect the rents, make repairs, and make the payments for plaintiff to the holders of the first mortgage. Thereafter he turned

over to plaintiff the contract for deed and assignment thereof executed by Bowler, duly recorded. It is hardly believable that plaintiff thought that he was to have a deed to the Como property before Swansen was to deliver the deed to the Hopkins property, for in December, 1925, he wrote to a bank inclosing a check "to apply on contract for #2120 Como Ave. S. E."—the Como property. Payments continued to be made, and not until more than four years after the transaction was this action for damages begun.

It will not be necessary to consider all the assignments of error since we have reached the conclusion that three of the assignments are well taken and require a reversal of the judgment against appellants. In the charge the court stated:

"In the early part of June, 1925, it stands undisputed that the plaintiff, Poppe, and the defendant, Seaborn, exchanged properties. One was willing to take the city property for reasons of his own, and the other was willing to take this country property."

When appellants' counsel at the close of the charge called attention to this misstatement it is obvious that the court did not cure the error by stating:

"What I meant was that plaintiff gave in the transaction his Hopkins property and from the transaction ultimately received the Como property. That may be a distinction without a difference, but it is perhaps proper to make that statement."

The important question for the jury was whether Swansen was the agent of appellants. To have the court state that plaintiff and appellants exchanged properties was virtually permitting the jury to draw inferences from a supposed transaction which not only had no evidence to support it but was conclusively proved not to have taken place. The Hopkins property did not go to appellants. They had never seen it; had never any right, title, or interest in it. Nor did they derive any benefit from its sale or disposition by Swansen through Bowler.

We also think that the evidence does not sustain the special verdict of the jury, adopted by the court in its findings, that Swan-

sen was the agent of appellants, nor the finding that there was a conspiracy to defraud between Swansen and appellants or either of them. That being so, the judgment against appellants cannot stand, and there is no need to consider any other errors assigned. Swansen has not appealed, and so the judgment remains as to him; and it is to be assumed that he made false representations upon which plaintiff relied to his damage in the sum of $6,000. The only person whom plaintiff claims to have made false representations was Swansen. According to the facts as above recited, there is no evidence that either of the appellants had seen Swansen before June 5, when they met him in the White company's office. The testimony of both Swansen and appellant George D. Seaborn is that they had not met and that Swansen had not been employed as agent. True, agency may be shown by circumstantial evidence. But we do not find any fact or circumstance from which to infer either agency or ratification by appellants of the acts of Swansen. Ratification cannot be invoked by plaintiff, for in order so to do appellants must be shown to have had full knowledge of what the pretended agent had undertaken to do in their behalf. 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 181. They not only did not receive the Hopkins property nor the fruits of anything which plaintiff parted with, but there is no proof whatever that they had the slightest knowledge of Swansen's dealings with plaintiff in the name of Bowler or otherwise. There are other facts relating to Swansen's dealings with plaintiff of which there is no proof that appellants had any knowledge until long after June 5, 1925. There was not sufficient evidence of ratification upon which to base a verdict or finding of agency. Furthermore, appellants had no knowledge of the Hopkins property and did not know that it figured at all in the sale of their Como property. The money which appellants received in the sale of the Como property was paid to their agent, the White company, by Swansen and not by plaintiff. It was Swansen's money. If any inferences at all are justified it would be that Swansen was the agent of plaintiff or else acted for himself, but ostensibly for his dummy, Bowler.

.Plaintiff claims much from the fact that Swansen told his daughter that he was "commissioned to trade" the Como property, and that Swansen stated that appellants would pay him commission. While this was properly admissible against defendant Swansen, it was hearsay and of no probative value against appellants. Admissions of an agent do not prove his employment as agent. 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 149, authorities cited under No. 77. Plaintiff also contends that the jury had a right to infer that Swansen was appellants' agent from the fact that Mr. White could not tell what was done with $200 of the $1,000 commission charged appellants, claiming that the White company must have paid that to Swansen. But if the company so did, it would not be evidence of an employment by appellants. The White company had no authority, by virtue of its employment to sell, to engage anyone else as agent for appellants to sell their property.

The general rule is that the employment of an agent to sell real estate confers no authority upon the agent to delegate the power to sell to a subagent. No other rule could be practical or reasonable. An owner selects an agent to sell his property in whom he has confidence that he will perform his mission honestly and without misrepresentations that will involve the owner in difficulties. It is not contemplated that the agent should delegate his authority to others who might make the owner responsible for their misrepresentations. 1 Mechem, Agency (2 ed.) § 306; W. H. Barber Agency Co. v. Co-op. Barrel Co. 133 Minn. 207, 158 N. W. 38, L. R. A. 1916F, 88; Bromley v. Aday, 70 Ark. 351, 68 S. W. 32; Floyd v. Mackey, 112 Ky. 646, 66 S. W. 518; Groscup v. Downey, 105 Md. 273, 65 A. 930. The very fact that appellants had given the White company exclusive agency to sell excludes the suggestion that they thereby conferred authority to employ other agents to sell to whom they would be liable for commission and for whose misrepresentations or torts they would be responsible. Furthermore, the White company, in the account rendered appellants of the sale, charged them the full commission they agreed to pay. There are no circumstances going to show that Seaborns knew that the purchase by Bowler was in behalf of Swansen or that plaintiff's

Hopkins property went to either Swansen or Bowler. So far as Swansen's agency goes, it rather definitely appears that plaintiff considered him his agent; he left his deed with him, he intrusted him to accept and record the instruments which gave him title to the Como property, and for months Swansen continued to be plaintiff's agent to collect rents and make repairs on that property.

In our opinion there is no evidence beyond mere speculation upon which to base a verdict or finding of agency in Swansen to act for appellants in the sale of their Como property. Under the undisputed facts there could be no finding of conspiracy to defraud in which either of appellants participated. Arriving at this conclusion, it is not necessary to consider whether the appellant wife stands in a better position than the appellant husband; nor any other of the errors assigned.

The judgment against appellants is reversed.

