RUSSELL F. EGNER v. STATES REALTY COMPANY
AND OTHERS.[1]

March 7, 1947.

No. 34,335.

---
[1]Reported in 26 N. W. (2d) 464.

*Russell F. Egner,* pro se.
*Cummins, Cummins & Christianson,* for respondents.

PETERSON, JUSTICE.

Plaintiff sues to enjoin defendants from breaking a sales agency contract entered into between him and Arthur C. Lesch, as copartners, as one party, and the defendant States Realty Company, as the other, and for accounting of amounts due for services rendered thereunder. While there are two other defendants, there is no occasion to refer to them, and, because that is true, we shall refer to the realty company as the defendant.

The case was tried upon a written stipulation of facts. Under the stipulation, decision was to be without prejudice to either party's right to an accounting and damages for breach of contract. Two questions were submitted for decision: (1) Whether the dissolution of the partnership by the withdrawal of Lesch as one of the partners terminated the agency contract; and (2) whether the services to be rendered in performance of the contract by the partnership were of

such a character that the contract was not specifically enforceable. The facts giving rise to these questions are set forth in the stipulation of facts.

The parties entered into two contracts: One for an exclusive agency for the sale of cemetery lots owned by Minnesota-Acacia Park Cemetery Association, of which the defendant had the sales agency, and the other for employment of solicitors of purchasers of the lots.

The agency contract was entered into on January 21, 1944. It recites that the contract was between defendant, as the first party, and the partners, as the second party; that the partners "are experienced cemetery lot salesmen"; and that they desired to enter into a contract with defendant for the purpose of finding purchasers and bringing about sales of cemetery lots, which defendant was agent to sell for Minnesota-Acacia Park Cemetery Association. So far as here material, the contract provides that defendant did "hire, employ and engage the services" of the partnership "as exclusive agents" to have general charge of procuring purchasers for the cemetery lots and in connection therewith to carry on necessary promotional saleswork and activities; that for the duration of the contract the partners would not engage in the sale of cemetery lots for others in Hennepin and Ramsey counties; that it was contemplated that the partnership would employ solicitors to procure purchasers of the cemetery lots; that defendant would pay the partnership a stipulated compensation for "services" rendered under the contract; that defendant would pay the solicitors the commissions earned by them; that the contract should be in force until December 31, 1944, and from year to year thereafter, provided the partnership produced a stipulated amount of business; "that one or the other" of the partners "shall devote sufficient of his time and effort to properly supervise and manage the performance of this agreement, or in lieu thereof will employ some person who meets with the approval" of defendant "to do such work"; that if the partnership failed to comply with the last-mentioned provision defendant should have the right forthwith to cancel and terminate the contract; that the contract, not-

withstanding any other provision thereof, might be terminated by either party for legal cause without notice; and in the event that either of the partners should die before the completion of the contract the surviving partner should have the right to continue the performance thereof, subject to all the terms and provisions thereof, except that the compensation to be paid should be one-half of what it would be if performance was by both partners.

The contract for the employment of solicitors was a separate one regulating, as between defendant and solicitors procured by the partners, the powers and duties of solicitors. It provided that the solicitors were authorized to procure purchasers of cemetery lots, but that they should have no authority to bind defendant in any manner whatsoever; that solicitors should be paid by defendant for their services in the manner therein stipulated; and that a solicitor was an "independent contractor" operating on his "own." Defendant undertook also to counsel and assist the solicitors in their work. The partners, and apparently all solicitors, signed such contracts.

The parties performed the contracts until February 19, 1945, on which date Lesch withdrew from the partnership. Upon being informed of that fact, defendant elected to treat the agency contract as terminated and so notified the members of the partnership in writing. During the year 1944, the partnership produced business in excess of the amount required to entitle it to continue the contract for another year. While subsequent to February 19, 1945, there was no performance of the contract by any party, plaintiff was ready, willing, and able to perform and offered to do so.

The only importance of the contract for the employment of solicitors here is the contention of plaintiff that, because defendant authorized the employment of solicitors to procure purchasers of cemetery lots, agreed to pay the solicitors their compensation, declared them to be independent contractors and undertook to counsel and assist the solicitors in their work, it shows, when considered with provisions of the agency contract, that the services to be rendered by the partnership were not of a personal nature and could be performed by one as well as by both partners.

Plaintiff contends that, notwithstanding the dissolution of the partnership by Lesch's withdrawal, he had the right to continue the performance of the agency contract for the reasons that (1) the contract was a joint and several one between defendant and both partners; and (2) the contract was not one for the performance of personal services by the partners, because it called for the production of sales of cemetery lots and not the rendition of services and because, regardless of what otherwise might be the rule, the parties manifested an intention that the services, if they were such, were not of a personal character, since the provisions of the contract were to the effect that the partners should engage solicitors to procure purchasers of the lots; that the solicitors were to be *independent contractors;* that defendant should pay them directly the commissions for sales produced; that one or the other of the partners should devote sufficient of his time and effort to supervise and manage the performance of the contract; and that in the event one partner died the survivor should have the right to continue the performance of the contract.

Defendant contends (1) that plaintiff has no contract to enforce, for the reason that the agency contract was terminated by operation of law by Lesch's withdrawal from the partnership; and (2) that, even if the contract was in force, specific performance should not be compelled by enjoining its breach, for the reason that the contract is one for the rendition of personal services not of a unique character.

■ An agency conferred upon several persons by a single act of authorization is joint and must be exercised jointly by all the designated agents. An act done by a less number is void as against the principal. Trustees of German Ev. Luth. St. John's Cong. v. Merchants Nat. Bank, 139 Minn. 80, 165 N. W. 491; Rollins v. Phelps, 5 Minn. 373 (463). The principal is deemed to have bargained for the "combined" personal ability, integrity, and other personal qualities of the agents. 1 Mechem, Agency (2 ed.) § 198. Where a partnership is appointed agent, the rule applies, subject only to the modifications thereof arising from the partnership relation. The

agency is conferred upon the *partnership*—upon the members collectively and as a unit, and not severally and individually. Deakin v. Underwood, 37 Minn. 98, 33 N. W. 318, 5 A. S. R. 827; Annotation, Ann. Cas. 1915C, 620. While this is true, the appointment is deemed to have been made with reference to the rules of law governing partnerships. During the existence of a partnership each member is the agent of the others and authorized to transact the business of the firm. Consequently, where the firm business includes that of an agency, each partner has the power to execute it; the act is considered the act of the firm when performed within the scope of the agency. As said in Deakin v. Underwood (37 Minn. 101, 33 N. W. 318) :

"* * * Even where the authority is given to several agents, this rule is not so rigid and inflexible as to overcome the apparent intention of the parties to the contrary. Story, Ag. §§ 42, 43; Hawley v. Keeler, 53 N. Y. 114. But we think the rule has no application where the authority is given to a partnership as such. Each member of a partnership is the agent of the firm, and all the partners are jointly accountable for the acts of each other; and, where a person appoints a partnership as his agent, he must be deemed to have done so with reference to these rules of law. When a person delegates authority to a firm, it is an appointment of the *partnership* as his agent, and not of the individual members as his several and separate agents. Hence each partner may execute, and the act of one is the act of the firm, and in strict pursuance of the power. Gordon v. Buchanan, 5 Yerg. [Tenn.] 71."

But, when the partnership ceases, the powers of the partners derived from the partnership relation also cease. It is only during the existence of the partnership that a member can execute an authorization conferred upon the firm. Schlau v. Enzenbacher, 265 Ill. 626, 107 N. E. 107, L. R. A. 1915C, 576.

The uniform partnership act, L. 1921, c. 487, § 29, provides that a partnership is dissolved by a "change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as

distinguished from the winding up of the business." Under the statute, the same as prior to its enactment, the withdrawal of a member from a partnership operates to dissolve the partnership. Security State Bank v. Nelson, 171 Minn. 332, 214 N. W. 51; Thanos v. Thanos, 313 Ill. 499, 145 N. E. 250. While, as plaintiff contends, § 30[3] of the uniform partnership act provides that a partnership is not "terminated" by dissolution, but continues until the winding up of the firm's affairs is completed, §§ 33 and 34[4] make it clear that, except for purposes of winding up and completing transactions of the firm, dissolution terminates the authority of the partners to represent the firm. See, H. F. Shepherdson Co. v. Central F. Ins. Co. 220 Minn. 401, 19 N. W. (2d) 772.

Prior to the enactment of the uniform partnership act, the rule was well settled that an agency conferred upon a partnership was terminated by operation of law by the withdrawal of a partner from the firm, because the withdrawal of the partner operated to dissolve the partnership. Schlau v. Enzenbacher, 265 Ill. 626, 107 N. E. 107, L. R. A. 1915C, 576; Larson v. Newman, 19 N. D. 153, 121 N. W. 202, 23 L.R.A.(N.S.) 849; 40 Am. Jur., Partnership, § 267. The cited cases, as here, involved agencies to sell land. In W. H. Barber Agency Co. v. Co-operative Barrel Co. 133 Minn. 207, 158 N. W. 38, L. R. A. 1916F, 88, we held that an agent to sell personal property could not transfer the agency to a corporation without the principal's consent. There we cited and approved numerous cases, including Larson v. Newman, *supra,* holding that an agency conferred upon a partnership is terminated by operation of law by the dissolution of the partnership, and said (133 Minn. 208, 158 N. W. 38):

"* * * It is held that where a principal has authorized a partnership to act as his agent, the subsequent dissolution of the partnership terminates the agency, and that a partner who takes over the

[3] Minn. St. 1945, § 323.29 (see, M. S. A. § 323.29, and cf. Mason St. 1927, § 7413).

[4] Minn. St. 1945, §§ 323.32, 323.33 (see, M. S. A. §§ 323.32, 323.33, and cf. Mason St. 1927, §§ 7416, 7417).

business cannot continue to act as such agent, unless the principal authorizes him to do so."

The uniform partnership act has effected no change in this rule. Under the act, the same as before, the dissolution of a partnership acting as agent operates as a matter of law to terminate the agency.

■ Plaintiff in effect contends that the rules just stated have no application here, for the reason that the execution of the agency involved performance of no acts of personal service, but rather the production of sales of lots in certain amounts. The argument in support of the contention is that it could make no difference to defendant whether the sales were produced by both partners acting as a partnership or by one of them or by a third person; and that the parties manifested such an intention by the contractual provisions which we referred to above as relied on by plaintiff in support of his views.

Ordinarily, the execution of an agency for the sale of land involves the performance of services that are personal in the sense that they are neither delegable nor assignable. Poppe v. Bowler, 184 Minn. 415, 238 N. W. 890; W. H. Barber Agency Co. v. Co-operative Barrel Co. *supra;* 2 Am. Jur., Agency, § 196. Because that is true, an agent's remedy to recover compensation for procuring a purchaser is an action to recover the agreed or reasonable value of his services. 12 C. J. S., Brokers, § 102. Here, the contract in express terms states that the partners were employed, hired, and engaged to render "services" and that they were to receive a stipulated compensation for their "services." Plaintiff's argument to the contrary is plainly without merit.

Executory contracts for personal services can be performed ordinarily only by the person who has contracted to render them. This is especially true where the contract shows that authority has been conferred upon another because of personal confidence or trust. The reason is that the personal qualities of the person who is to render the services, such as his ability, skill, taste, integrity, dependability, and the like, are a material factor and consideration for the employment. Because that is true, an agent to sell land cannot delegate

his duties (Poppe v. Bowler, 184 Minn. 415, 238 N. W. 890, *supra;* Coleman v. Connolly, 242 Ill. 574, 90 N. E. 278, 134 A. S. R. 347; 2 Am. Jur., Agency, § 196, note 9), and contracts for exclusive selling agencies are not assignable (W. H. Barber Agency Co. v. Co-operative Barrel Co. 133 Minn. 207, 158 N. W. 38, L. R. A. 1916F, 88, *supra;* 4 Am. Jur., Assignments, §§ 8, 9). See, Delaware Co. Commrs. v. Diebold Safe and Lock Co. 133 U. S. 473, 10 S. Ct. 399, 33 L. ed. 674. It follows that one partner of a firm holding a sales agency contract cannot assign his interest in the contract to his partner. Paige v. Faure, 229 N. Y. 114, 127 N. E. 898, 10 A. L. R. 649, and annotation. Likewise, where one partner of a firm holding such a contract withdraws from the firm, the remaining partner or partners do not succeed to the firm's rights to perform the contract. Schlau v. Enzenbacher, 265 Ill. 626, 107 N. E. 107, L. R. A. 1915C, 576, and other cases cited *supra,* in support of the view that in such a case the withdrawal of a partner operates to terminate the contract. The reason is that the principal contracted to have all the partners act as agents and to have the benefit of their combined ability, skill, and other personal qualities—"he has never appointed him [the remaining partner] to act, nor agreed to be responsible for his acts." 40 Am. Jur., Partnership, § 267, *supra.* To hold otherwise would be to foist upon the principal a contract he did not make and to which he did not assent. Paige v. Faure, *supra.* It makes no difference in such cases that the transferee would perform as well or better than the party who contracted to render the services. Smith v. Zuckman, 203 Minn. 535, 282 N. W. 269.

Here, the contract on its face shows that defendant employed both plaintiff and Lesch, as partners, because they were experienced cemetery lot salesmen and because it expected to realize on the combined sales ability of both of them in promoting sales of cemetery lots. Consequently, under the rules stated, plaintiff did not succeed to the rights of the partnership in the agency contract when Lesch withdrew from the partnership, unless a contrary conclusion is compelled by the contractual provisions relied on by plaintiff as having such effect.

■ The question whether the affirmative tokens of intention present here that the contract called for personal services of the partners must yield to a contrary meaning, which plaintiff contends is clearly betokened by other contractual provisions, presents a problem of construction. It is perhaps trite to say that the object of construction is to ascertain and give effect to the intention of the parties and that in order to accomplish that purpose the contract should be construed as a whole. Apparent conflicts between clauses will be resolved by giving full effect to principal and more important clauses and subordinating thereto those of minor importance. Oleson v. Bergwell, 204 Minn. 450, 283 N. W. 770. Unless required by the contract as a whole, no construction of a subsidiary provision is permissible which runs counter to and is in frustration of the dominant purpose of the contract. Andrews v. Wells-Dickey Trust Co. 163 Minn. 35, 203 N. W. 439, 205 N. W. 65. Also, the definite prevails over the indefinite. Weiss v. City of St. Paul, 211 Minn. 170, 300 N. W. 795; Associated Cinemas of America, Inc. v. World Amusement Co. 201 Minn. 94, 276 N. W. 7.

The principal clauses here are those relating to the employment of the partners by defendant to organize and conduct a sales promotion of its cemetery lots, payment of compensation for their services, and termination of the contract for legal cause. The dominant purpose was to effect sales of cemetery lots. These clauses have definite meaning. They are self-expository. The clauses relied on by plaintiff, while important, are subordinate clauses relating to details of performance and the status and authority of the solicitors. That being true, no construction of these clauses is permissible which would be contrary to the principal clauses of the contract or frustrate the dominant purposes thereof. We think that when these clauses are considered in the light of the rules stated, as we shall do presently, they do not have the effect plaintiff claims for them.

The clauses for the employment of solicitors by the partners and for payment of the solicitors' compensation by defendant authorize only a partial delegation of the partnership's authority as agent and not the whole thereof. The partners' principal duty was to organize

and supervise a campaign for the sale of cemetery lots. They were employed for this purpose because of defendant's trust and confidence in their personal qualities for such purposes. These they were not authorized to delegate. There was no attempt to do so. Notwithstanding the partial delegation in question, the partners were still required personally to organize and supervise the sales activities. Because they were authorized to hire solicitors and defendant agreed to pay the latter their compensation, it was important to define the status and duties of the solicitors. That was the purpose of the clauses in question. A principal and agent may agree as to the terms and conditions upon which the agent may employ subagents, including the condition that subagents shall be deemed as between the parties to be the agents of the agent and not of the principal. Sater v. Cities Service Oil Co. 235 Wis. 32, 291 N. W. 355. See, Semingson v. Stock Yards Nat. Bank, 162 Minn. 424, 203 N. W. 412. That is what the parties here did. While defendant authorized the hiring of the solicitors and agreed to pay them, it did not want to constitute them its agents. In the contract it was stipulated that they were "their [the partners'] solicitors." This was done lest it be claimed that the solicitors should become defendant's agents by operation of the rules of law that a subagent appointed by the express or implied authority of the principal becomes the agent of the principal[5]; that in such cases the agent is not responsible for the acts of the subagent[6]; and that further in such cases the subagent is responsible directly to the principal and not to the agent who employed him.[7] At the same time, it was deemed advisable here to provide that the solicitors should have no authority to represent defendant.

[5]Haluptzok v. G. N. Ry. Co. 55 Minn. 446, 57 N. W. 144, 26 L. R. A. 739; Kuhnert v. Angell, 10 N. D. 59, 84 N. W. 579, 88 A. S. R. 675.

[6]Bank of Kentucky v. Adams Express Co. 93 U. S. 174, 23 L. ed. 872; Davis v. King, 66 Conn. 465, 34 A. 107, 50 A. S. R. 104; Hoag v. Graves, 81 Mich. 628, 46 N. W. 109; National Steamship Co. (Ltd.) v. Sheahan, 122 N. Y. 461, 25 N. E. 858, 10 L. R. A. 782.

[7]Thomas Wilson and Co. v. Smith, 44 U. S. (3 How.) 763, 11 L. ed. 820; Finch v. Karste, 97 Mich. 20, 56 N. W. 123.

The provision in the solicitor employment contract that the solicitors were "independent contractors" related to the extent of defendant's control over the solicitors and not the nature of the services, which either they or the partners were to render under the agency contract. See, 1 Restatement, Agency, § 2.

The clause requiring one or the other of the partners to devote sufficient of his time and effort properly to supervise and manage the performance of the contract or in lieu thereof to employ a suitable third person for the purpose should be construed not only as part of the contract as a whole, but especially in connection with the rest of the clause, which provides that if the partners should fail to carry out this provision defendant should have the right forthwith to cancel and terminate the contract. Thus, it appears that the duty of seeing that the performance of the contract was supervised and managed was imposed on both partners, not on one only. By providing that it should be the duty of both partners, and not one only, to see to the supervision and management of the performance of the contract, the right of one partner to perform the contract alone was negatived. Furthermore, a construction that either party should have the right to perform the contract would render meaningless and superfluous the provision that in case of the death of one partner the survivor should have the right to continue performance. If the construction mentioned is correct, either party would have a right to perform regardless of the other and regardless, also, of whether the other was dead or alive.

It seems improbable that the parties intended that the requirement that one or the other of the partners should supervise and manage the performance of the contract related to acts required to be done by the partners themselves in performance of the contract. The word "supervise" definitely relates to acts of others rather than to those of the person doing the supervising. Fluet v. McCabe, 299 Mass. 173, 12 N. E. (2d) 89. As said in Von Rosenberg v. Lovett (Tex. Civ. App.) 173 S. W. 508, 514: "To supervise does not mean to do the work in detail, but to see that it is done. It means to oversee, with power of direction." In view of the fact that it was

the nondelegable duty of the partners to supervise and manage the sales promotional activities of the solicitors and that to do it was necessary, as said of the work of *supervisory employes* in relation to their subordinates in the case of International Assn. etc. v. N. L. R. B. 311 U. S. 72, 80, 61 S. Ct. 83, 89, 85 L. ed. 50, 56, "to translate to their subordinates [the solictors] the policies and desires of the management," and in view of the meaning of the word "supervise" just stated, it seems that the word was used to refer to the activities of the solicitors, and not to those of the partners themselves. Perhaps the word "manage" does not so certainly refer to acts of some one other than the manager as the word "supervise" refers to those of some one other than the supervisor. But, generally, that is true. While it may be said that one manages his own affairs or business, it never is said that he manages himself or the doing of something himself. It generally is used to refer to management of some thing, some business, some person or creature. Apparently, the word "manage" was so used here, because it was used in reference to the same things as the word "supervise." Thus, the word "supervise" communicates meaning to the word "manage." It is, as said in Brown v. C. & N. W. Ry. Co. 102 Wis. 137, 78 N. W. 771, 44 L. R. A. 579, a case of knowing a word by the company it keeps. Since the word "supervise" refers only to supervising and managing the activities of the solicitors and not to the performance of the contract otherwise by the partners, the word "manage" does also. Neither contemplates that the partners should supervise and manage performance of the contract by themselves. So construed, the provision lends no support to plaintiff's contention.

In a somewhat similar case, an executory contract for the employment of a firm of architects to prepare plans and specifications for and to superintend the erection of a schoolhouse, and one or the other of the members at the "owner's choice" was to visit the work once a week, it was held that the withdrawal of a partner from the firm dissolved the partnership and terminated the employment. Smith and English v. Board of Education, 115 Kan. 155, 157, 222 P. 101, 102.

Lastly, the contractual provision that one partner in case of death of the other should have the right to continue performance of the agency contract and receive as compensation therefor one-half the amount payable for performance by both partners not only does not permit an inference that the parties intended that one partner should have the right in any event to perform the contract alone and receive full compensation therefor, but seems to indicate a contrary intention. The clause in question should be construed in connection with the one providing that the contract might be terminated by either party "for legal cause." A partnership may be dissolved for numerous causes. Uniform partnership act, §§ 29 to 32[8]; 47 C. J., Partnership, §§ 569 to 788; 40 Am. Jur., Partnership, §§ 197 to 322. Since dissolution of a partnership operates to terminate an agency conferred upon the firm, the causes for terminating such an agency upon that ground are as numerous as those for the dissolution of a partnership. Death of a partner is such a cause. Hoard v. Clum, 31 Minn. 186, 17 N. W. 275. As pointed out above, withdrawal of a partner from the firm also is such a cause. The contract here evinces an intention that the parties should have the right to terminate it for all legal causes except the single one of the death of one partner, in which case the survivor should have the right to continue performance. By enumerating only the case where a partner dies as the single one where the rules for termination of the agency for legal cause should not apply, all other cases where the rule is applicable, including those where a partner withdraws, were impliedly excluded. The express enumeration of one instance of many belonging to the same class impliedly excludes the others. Park Const. Co. v. Independent School Dist. 216 Minn. 27, 11 N. W. (2d) 649; Wm. Lindeke Land Co. v. Kalman, 190 Minn. 601, 252 N. W. 650, 93 A. L. R. 1393. Consequently, while Lesch's death during the existence of the agency contract would have conferred upon plaintiff a right to continue the performance of the contract, Lesch's withdrawal from the partnership did not.

---

[8]Minn. St. 1945, §§ 323.28 to 323.31 (see, M. S. A. §§ 323.28 to 323.31, and cf. Mason St. 1927, §§ 7412 to 7415).

 

Our conclusion is that the contractual provisions relied on by plaintiff to show that he had a right to perform the contract alone do not support his contention.

■ Because the agency contract was terminated by operation of law by Lesch's withdrawal from the partnership, there was no contract in existence for plaintiff to perform as the remaining member of the firm.

■ And because the contract had been terminated, it is not necessary to decide whether it could be specifically enforced.

Affirmed.

