**LAPP v. LOUFEK et al.**

**Civ. A. No. 3688.**

United States District Court
D. Minnesota, Fourth Division.

June 16, 1953.

66

———————

Brody, Charlton, Parker & Roberts, Des Moines, Iowa, for plaintiff.

John P. Somers and Frank W. Plant, Minneapolis, Minn., for defendants.

JOYCE, District Judge.

This is an action for Declaratory Judgment under 28 U.S.C. § 2201 seeking a declaration of rights arising out of a certain contract. A short statement of the business relationships of the parties is necessary to an understanding of the claims asserted in the case.

Plaintiff's deceased husband, William H. Lapp, was during the 1920's an extension professor at Iowa State Agricultural College at Ames, Iowa, and was later employed by Live Poultry Transit Company in Chicago, Illinois, as a lecturer and supervisor in connection with the transportation of poultry and livestock. At some time while so employed and prior to 1930 he conceived an idea for a poultry litter based essentially on the use of cottonseed hulls treated with certain chemicals to be used as a bedding or covering for the floor of chicken houses instead of the peat or straw then in common use. The chemicals used in treating the cottonseed hulls included pine oil as an antiseptic and to prevent the litter from clinging to the chickens' feet, quinine to make it unpalatable, and various other chemicals in part intended to prevent packing or reduction in bulk and for other purposes.

In the early 1930's Lapp as an individual commenced doing business in Nevada, Iowa, as Lapp Laboratories. This was converted into a partnership in 1934 and in that year Lapp applied for a patent on the poultry litter which he called "Hygeno-Litter", and obtained a patent thereon under date of September 17, 1935. While so operating Lapp leased space in the Minneapolis warehouse of Northern Oats Company and became acquainted with its President and General Manager Charles Loufek, one of the defendants here. In 1936 the Nevada, Iowa, operation was incorporated as Lapp Laboratories of Iowa, under the laws of Iowa, the former partners holding the stock thereof. Some time in December of that year Charles Loufek acquired substantially all of the stock in the corporation other than that held by Lapp. Loufek thus acquired approximately 65% of the outstanding stock but gave Lapp an option to purchase stock which if exercised would have resulted in equal holdings by the two shareholders. This option was extended more than once but was never exercised. This corporation and the preceding partnership had engaged in a general feed business as well as the preparation and sale of "Hygeno-Litter". The patent itself had been assigned to the partnership but was not formally transferred to the corporation

by the partnership, although intended to form one of the assets of the corporation. However, in 1936 such intention was perfected by the execution of a formal assignment of the patent from Lapp individually to the corporation. Neither the assignment nor previous transactions had vested the corporation with any rights to patent improvements which might be discovered in the future by Lapp.

Shortly after Loufek acquired stock in Lapp Laboratories of Iowa, he caused Lapp Laboratories of Minnesota, incorporated, to be formed which acquired rights to sell "Hygeno-Litter" in Minnesota and certain other states. Thereafter, although the processing and manufacture of the litter was done by Interstate Mills, Inc. of Illinois, the distribution and primary sales source of the litter was the Minnesota corporation, although the Iowa corporation retained a sales territory. It appears that in the period immediately prior to the transactions giving rise to this suit the preparation and sale of "Hygeno-Litter" was a substantial and going business although there is some difference of view as to its profitableness as of that time.

Commencing in the summer or early fall of 1942 the transaction or series of transactions occurred which gave rise to the present litigation. Lapp and Loufek executed a writing, introduced in evidence as Plaintiff's Exhibit 1, bearing the date of October 1, 1942, which after reciting that Lapp was the inventor of "Poultry and Animal Litter" under Letters Patent No. 2014900 and that Loufek was now the owner of that patent "through mesne assignments" provided in its relevant parts as follows:

"Now, therefore, in consideration of the premises and the mutual promises and covenants herein contained, the parties hereto have agreed, and do hereby agree, as follows:

\*　　\*　　\*　　\*　　\*　　\*

"2. The Inventor will, during the term of this Agreement, cooperate with and render to the Producer professional advice and personal services, when requested so to do, relative to the improvement of said 'Poultry and Animal Litter', including preparation of formulae therefor and the manufacture thereof. The Inventor will, also, make available and give to the Producer the benefit of any and all alterations, additions, changes or improvements in and to the aforesaid 'Poultry and Animal Litter' or the formulae therefor, which, during the life of this Agreement, he may make, discover or invent, whether or not such improvements or changes are incorporated in additional or supplementary Letters Patent, or otherwise.

"3. The Producer will pay to the Inventor, in convenient installments, and at least annually, during the life of this Agreement, a sum equal to fifty per cent (50%) of the annual net earnings realized by the Producer in the manufacture, sale and distribution by him of 'Poultry and Animal Litter' under the aforesaid Letters Patent; and in determining the net profits the Producer shall be allowed an annual salary of Seventy-five Hundred Dollars ($7500.00) per year as his expense of operating the business.

\*　　\*　　\*　　\*　　\*　　\*

"6. This Agreement shall be in full force and effect during the remaining life of the aforesaid Patent No. 2014900, or any extensions or renewals thereof.

"7. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs and legal representatives."

The same parties executed another writing, Plaintiff's Exhibit 49, bearing the same date in which Loufek sold his 65% of the stock of the Iowa corporation to Lapp for the sum of $33,500, $6,000 being in cash and the balance in notes, payment being secured by deposit of the stock in escrow.

The third writing, Plaintiff's Exhibit 64, bearing the same date was a formal assignment of the Hygeno-Litter patent executed by Lapp on behalf of the Iowa corporation to Loufek individually for the recited consideration of $1 and other valuable consideration.

By instrument dated January 30, 1943, Loufek assigned the patent to Charles H. Davis as trustee. Davis was then trustee of the family trust created by Charles Loufek in an instrument dated the same day.

After the above occurrences the Minnesota corporation continued to deal in "Hygeno-Litter" and made payments of annual net earnings therefrom to Davis as trustee who thereupon made division equally between Lapp and the trust beneficiaries. Such payments to Lapp continued to be made until he died on July 5, 1949. Upon the subsequent refusal to make further payments, plaintiff as executrix of the estate of Lapp commenced this action against Loufek, and Davis as trustee, seeking a declaratory judgment that defendants must pay to plaintiff or her assignee during the life of the patent a sum equal to 50% of the annual net earnings realized from the sale of the litter.

Plaintiff's original complaint herein declared only upon the writing executed by Lapp and Loufek individually but she later amended to base her claim upon the three writings alleging they constituted one transaction and contract. Prior to this amendment Davis died and plaintiff was permitted to substitute as defendant Harley E. Hyre, he being the successor trustee.

The defendants answered denying liability and asserting the contract terminated by reason of the death of Lapp, also claiming fraud in the inducement of the contract and a failure by Lapp to disclose improvements to the patent previously discovered by him. The resulting issues were tried before the court without a jury.

■ Although this action is formally one for a declaratory judgment, yet of necessity here the plaintiff as to some of the issues bears the burden of proof or suffers the risk of nonpursuasion. Pacific Portland Cement Co. v. Food Machinery & Chemical Corp., 9 Cir., 178 F.2d 541; Reliance Life Insurance Co. v. Burgess, 8 Cir., 112 F.2d 234. First of all it is obvious that plaintiff has the burden of establishing the contractual terms under which she seeks a declaration of rights. Having urged that all three writings of October 1, 1942, constituted one inseparable transaction and agreement, she must so far as such conclusion is dependent upon matters outside the writings themselves establish that relationship in the evidence. Secondly, whatever the writing or agreement upon which a declaration is sought, the plaintiff must establish as she has pleaded that she and the decedent Lapp performed all the obligations imposed upon them by such agreement upon which the defendants' obligation was conditioned.

Plaintiff's claim in essence is that the promise of Lapp to render "professional advice and personal services" the performance of which was rendered impossible from and after Lapp's death was merely an incidental consideration not going to the root of the contract and accordingly such failure to perform did not excuse Loufek and those in privity with him from their obligation to make payments out of net earnings as provided for by paragraph 3 of the same writing. It is in aid of this construction that plaintiff claims all three writings constituted one contract so that the failure to perform as to that particular is purportedly demonstrated to be an even smaller fraction of the whole consideration than would appear merely from the face of the one writing taken by itself.

■ Accordingly, although not fully determinative of the case, it is necessary to examine whether there was in fact one or several contracts. The general rule applied in Minnesota is that stated in 2 Dunnell, Dig. Sec. 1831 and quoted with approval in In re Holtorf's Estate, 224 Minn. 220, 28 N.W.2d 155, 157:

> "Instruments executed at the same time, for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together, unless the parties stipulate otherwise. Where one instrument refers to another for any purpose, the latter, for the purpose and to the extent of the reference, will be deemed a part of the former."

As indicated above and as shown in In re LeBorius' Estate, 224 Minn. 203, 28 N.W. 2d 157, it is necessary that the writings themselves supply the connecting links by way of reference in order to apply the rule.

■ The plaintiff claims the reference to "mesne assignments" in the recitals of Exhibit 1 constitutes the link between that writing and Exhibit 64. It appears to the court that such recital in its plain context

does not constitute, nor does it reflect an intention to indicate a reference to any other document. The recital therein "in consideration of the premises" refers not to an element of the bargain contained in Exhibit 1 but to a condition or fact which was precedent to the exchange or bargain thereafter set out. Assuming, however, that such reference would be sufficient when considered with the fact the instruments were dated to speak simultaneously and were executed by Lapp on the same day, there is in any event no express reference on the face of either instrument connecting it with Exhibit 49 and accordingly Exhibit 49 cannot be resorted to as an aid to interpretation.

Even if Exhibits 1 and 64 are connected by reference that fact does not necessarily establish that the two writings constituted one bargain in the sense that all of the considerations expressed therein constituted one exchange, particularly where, as here, the parties are not identical. Such is a matter of fact to be determined from an examination of the face of the instruments and consideration of such other evidence as may be admissible on the question. See Bolles v. Sachs, 37 Minn. 315, 33 N.W. 862, where direct parole evidence was admitted to show the inter-relationship of the considerations stated in each instrument. Such evidence was admitted to show additional consideration in the face of a recital of receipt of a stated consideration under a well recognized exception to the Parole Evidence Rule.

■ Plaintiff here introduced evidence tending to show that the ordinary books of account of Lapp Laboratories of Iowa did not disclose the payment of any consideration for the patent assignment. However, there was also introduced evidence of an adjusting entry prepared by the firm's accountant and the cancelled check in the amount of $6,000 from Loufek to Lapp individually which I am satisfied demonstrates such consideration was paid, and was not fictitious. The payment to Lapp must be considered payment to the corporation as it then was by virtue of Exhibit 49 merely his alter ego. There is much conflicting evidence in the record relating to the profitableness of the patent at the time of assignment as bearing upon the adequacy of the

$6,000 paid as consideration. Without detailing such evidence, I am satisfied the value of the patent in view of its then prospects, the war-time difficulties existing with reference to availability of raw materials and recent history as to the net profits from its use, was not disproportionate to the value received.

■ Accordingly there is no inference to be drawn, in view of the otherwise apparent completeness of each instrument on its face, that the considerations were in fact interrelated and part of one bargain.

Similarly, it appears from the evidence on the question of the profits at that time reasonably to be expected from the manufacture and sale of the patented article that the commitment to pay one-half thereof to Lapp as found in paragraph 3 of Exhibit 1 was not so unreasonably large or disproportionate to the benefits to be expected from Lapp's performance of his undertaking in paragraph 2 as to give rise to any inference that such undertaking was not the whole of the consideration therefor.

■ Accordingly, neither the terms of the instruments themselves, nor the other evidence in the case is sufficient to demonstrate that the three instruments were other than separate contracts.

■ Viewing Exhibit 1 as the whole of the contract in issue, though it is not apparent that the result would be different if Exhibits 49 or 64 were also considered as parts of the contract, it appears that plaintiff was not and is not entitled to recover further payments in accordance with paragraph 2. The death of Lapp rendered it impossible for him to render the professional advice and personal services which were his obligation under the first sentence of that paragraph. The evidence demonstrates that such services were rendered by him while he lived, the record being replete with evidence of trips made by him in connection with the search for substitute ingredients, as well as advice given by him in connection with formula changes as well as in connection with advertising the product and dealing with customer complaints. The number of contacts between the parties including visits by Lapp to Loufek's place of business and the number and length of long distance

70

telephone calls between them is inconsistent with any other assumption than that they related to the business at hand and must have encompassed the giving of advice called for by paragraph 2.

While it is true that Lapp's obligation consisted of two undertakings as shown in the first and second sentences of paragraph 2, it cannot be said that the obligation to render professional advice and personal services was merely incidental or subsidiary. Both were equally material and substantial elements of the bargain. Since the defendant here has not gotten what he bargained for because of the death of Lapp, the obligations of both parties under the contract were terminated by that event. Williston on Contracts, Sixth Edition, Sections 838 and 1940; Egner v. States Realty Co., 223 Minn. 305, 26 N.W.2d 464, 170 A.L.R. 500.

The provision of the agreement that it should be binding upon the "respective heirs and legal representatives" of the parties is not inconsistent with an implied condition that the party obligated to perform the personal services shall be alive to perform them. Smith v. Zuckman, 203 Minn. 535, 282 N.W. 269, and the cases cited therein.

The above conclusion makes unnecessary any consideration of the defendants' claim of accord and satisfaction or of fraud except to indicate that it does not appear that defendants in any event have sustained their burden of proof with reference thereto.

Findings of fact and conclusions of law will be prepared in accordance with this Memorandum Opinion and submitted.