# JAMES PENAS v. ANNA A. CHERVENY AND OTHERS.[1]

January 26, 1917.

Nos. 20,083—(218).

**Contract — for support during life.**

1. Where a parent conveys real estate to her son, and contemporaneously therewith enters into a contract with the son whereby he agrees to pay to his parent and to each of his brothers and sisters a certain specified sum of money, to furnish the parent each year during her life certain provisions, and to furnish her certain rooms in the dwelling in which to live during the remainder of her life, construed under the rule laid down in Bruer v. Bruer, 109 Minn. 260, 265, and *held* to be a contract for support and maintenance, and therefore personal to the parent.

**Same — specific performance during parent's detention.**

2. The parent having been adjudged insane and committed to the hospital for the insane: *Held*, that during her detention in the hospital the provisions of the contract for the payment and delivery to her of money or property for her support are suspended, and that during such time such obligation cannot be enforced by her guardian.

Action in the district court for McLeod county by the guardian of Josephine Cherveny against Anna A. Cherveny, Louis Cherveny, Frank Cherveny and Elizabeth Cherveny to recover $115, the value of certain supplies due to his ward under the written contract set out in the opinion. The case was tried before Morrison, J., who made findings and ordered judgment in favor of defendants. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*F. R. Allen*, for appellant.

*H. H. Bonniwell* and *C. J. Odquist*, for respondents.

QUINN, J.

This is an action brought by the plaintiff, as guardian of Josephine Cherveny, an insane person, to recover the value of certain articles of

[1] Reported in 161 N. W. 150.

provisions to be furnished to the plaintiff's ward under a certain contract with her son.

The trial court found that the plaintiff was not entitled to recover and ordered judgment for the defendants. From an order denying a new trial plaintiff appealed.

On the eleventh day of February, 1907, Josephine Cherveny was the owner of a farm of 60 acres in McLeod county in this state, upon which there was a mortgage of $1,000. On that day she conveyed the farm by warranty deed to her son Frank Cherveny, subject to the mortgage, and, contemporaneously therewith, entered into a contract with her son which is as follows:

"This agreement made and entered into this eleventh day of February, A. D. 1907, by and between Frank Cherveny of McLeod county, Minnesota, party of the first part, and Josephine Cherveny of the same county and state, party of the second part, Witnesseth:

"That for and in consideration that the party of the second part did on this date execute her warranty deed and whereby she conveyed to the party of the first part, his heirs and assigns, the northwest quarter of the southwest quarter and the north half of the southwest quarter of the southwest quarter of section thirteen (13); township one hundred and seventeen (117) of range twenty-nine (29), situate, lying and being in the county of McLeod and state of Minnesota and have delivered said deed to said first party for record.

"Now, therefore, in consideration of the conveyance of said land by the second party herein named to the first party herein named the said first party for himself, his heirs, executors, administrators and assigns do [sic] hereby agree to and with the said party of the second part that he will and that his heirs or assigns shall give and deliver to said party of the second part each year during her natural life fifty bushels of good merchantable wheat to be delivered to the flouring mill or an elevator in the city of Hutchinson within a reasonable time after threshing each year; three hundred pounds of pork each year at the usual killing time in October or November; ten bushels of potatoes each year at the time of harvesting same in October each year; two cords of wood each year sawed and split ready for the stove; twelve gallon of sauerkraut each year; twelve dozen eggs to be delivered as she needed them; one gallon of

new milk each day to be delivered to her, and first party agrees to provide team and take second party to Silver Lake or Hutchinson six times in each year at her choice of time. The first party agrees to keep in good repair for the use of the second party one living room, one pantry and the stoop on the east side of the dwelling house now upon the lands herein described during her natural life with privilege to use half of the cellar under the house and to get water from the well near the house and the right of ingress and egress to and from the main road to dwelling house. The first party further agrees that the second party may have all the fruit grown upon five plum trees growing near the house, said first party further agrees to pay the second party the sum of two hundred dollars on or before February 11, 1908, with interest on the same at 6 per cent. The first party agrees to furnish and provide medical attendance and medicine and proper care for the second party in case of her sickness and the cost of the same he may deduct from the amount that he should pay and deliver to her. The first party further agrees that in case of death of the second party he will attend to and pay all funeral expenses and medical expense of last sickness. Said first party agrees to pay John Cherveny $200 on or before March 11, 1907, without int. and pay Mrs. James Penas $200 on or before February 1, 1908, with interest at 4 per cent and pay Joseph Cherveny $300 on or before March 11, 1907, without interest and pay Louis Cherveny $300 on or before February 11, 1909, with interest at 5 per cent and pay Mrs. Mary Miller $200 on or before February 11th, 1908, with interest at 5 per cent.

"In witness whereof," etc.

In the district court the trial was somewhat restricted, with respect to the reception of testimony offered by the defendants, but it appears that at the time of the execution of the above contract Josephine Cherveny was the mother of six grown children; that she lived upon the farm in question with her youngest son, Frank, who was about to marry the defendant Anna; that being well advanced in years and being desirous of making a distribution of her property among her children, and, at the same time, assuring unto herself sufficient support and maintenance during the remainder of her life, she conveyed the farm to her son Frank and entered into the contract above set forth. The value of the farm does not appear; but the contract required Frank to assume the mort-

gage of $1,000; to pay his mother $200 in money; to pay to his brothers Louis and Joseph each $300 and his brother John and his two sisters each $200; the amount of Frank's share was not specified, it probably being the intention to cover the same under the general provisions of the contract. In addition to the foregoing payments Frank was to furnish to his mother each year the articles of produce mentioned in the contract and to keep one living room, the pantry and east porch of the dwelling in good repair for her use during her lifetime, and to allow her the use of one half of the cellar; the right to use water from the well; the plums from five trees, and the right of ingress and egress to the house, and he was to take her to town six times each year; then, in addition to the foregoing, the contract provides that in case of her sickness he is to furnish and provide her with medical attendance, medicine and proper care, and the cost of the same he may deduct from the amount he should pay and deliver to her, and finally to pay the expenses of her last sickness and funeral. There is no provision in the contract for the payment of the money value of any of the articles referred to, in case the same are not delivered or furnished.

After his marriage to the defendant Anna, they lived together upon the farm until February 7, 1913, when Frank died intestate, leaving him surviving his wife and their three children, the defendants herein; thereafter the estate was probated, and the land in question was decreed to the three children, subject to the homestead right of the mother therein. During his lifetime Frank kept and performed all the conditions of the contract with his mother, making all the payments therein provided for and furnishing all the means of support required by the contract, and, after his death, his widow kept and performed the same until the year 1915. The mother lived in the room reserved for her in the dwelling until the thirty-first day of March, 1913, when she was adjudged insane and committed to one of the hospitals for the insane in this state, where she has ever since been detained and cared for by the state of Minnesota.

This action was brought to recover the alleged value of certain of the articles of produce to be furnished under the contract, for the year 1915, and to have the amount so recovered adjudged a purchase-money lien against the land, for a foreclosure of the lien and for a sale of the home

of the defendants. The plaintiff does not ask in his complaint to recover general damages for the breach of the contract, nor does he allege in his complaint that his ward is in need of any of the articles or things mentioned in the contract to be furnished, or that she has any use for the same or for the money value thereof. Upon the other hand, the defendants do not claim that they have delivered any of the articles for the year 1915, but they contend that they are not, under the circumstances and present condition of the plaintiff's ward, required to do so by the terms of the contract, nor are they liable for the money value of the same under any circumstances, so long as they are ready and willing to furnish the same whenever the plaintiff's ward can make use of them.

We think this contract should be construed under the rule stated in Bruer v. Bruer, 109 Minn. 260, 265, 123 N. W. 813, 28 L.R.A. (N.S.) 608, as one for the support and maintenance of the mother, therefore personal to her, and that there can be no enforcement of the pecuniary obligations thereby imposed by her guardian during the period of her insanity. The purpose of the contract, purely personal to the mother, would be extended far beyond what was intended by the parties, if it is held that the guardian may recover the value of the items of property stipulated to be paid or furnished under the contract, to be distributed, on the death of the mother, to the rest of the kin who have already received all that the mother intended they should have of her estate. The contract provides that the mother shall have the plums from five trees, the use of water from the well, the right to use and occupy certain parts of the house, and the right to be taken to town by the son six times each year. If the guardian may recover the value of the grain and provisions agreed to be delivered to the mother by the contract, then by the same token he could recover as for a conversion of the plums, the value of the use and occupation of the portion of the house reserved to the mother, the value of the water not consumed by her while detained in the hospital. This would lead to an absurdity and without further discussion we hold that, during the time Mrs. Cherveny is detained in the hospital, the provisions of the contract for the payment and delivery to her of

money and property for her personal support must be held .to be under suspension, and the obligations thereby created cannot, during such time, be enforced by her guardian.

Order affirmed.