## Citizens Trust Company et al. v. Metzger

*Homer L. Kreider* and *Nolan F. Ziegler*, for plaintiffs.

*Walter R. Sohn*, for defendant.

NEELY, J., January 22, 1951.—This proceeding is in equity and the matter is before us on plaintiff's bill and answer thereto and testimony taken. Plaintiff's bill alleges that Wesley Metzger executed and delivered to defendant a deed dated August 6, 1948, for certain premises known as 1202 North Fourteenth Street, in the City of Harrisburg, Pa., and that the consideration for the execution of this deed was a written contract on the same date, under the terms of which defendant agreed to support and maintain Wesley Metzger for and during the term of his natural life. Plaintiff is Citizens Trust Company, as guardian of Wesley Metzger, a weak-minded person.

Plaintiff avers that on September 9, 1949, due to his advanced age, Wesley Metzger had deteriorated to such an extent, both physically and mentally, that it was necessary to supply nurses and medical care

in his home, at 1200 North Fourteenth Street, until the commitment of Wesley Metzger in the Harrisburg State Hospital on December 13, 1949. It is averred that defendant was living in the home of Wesley Metzger on September 9, 1949, and in accordance with the agreement defendant was obliged to supply such nursing services, and otherwise provide for the care of Wesley Metzger, but that defendant failed to do so. It is further averred that Wesley Metzger is presently a patient at the Harrisburg State Hospital, and that defendant has refused and continues to refuse to pay any part of his maintenance at that institution.

We are asked to decree a cancellation of the deed of August 6, 1948, and a reconveyance to plaintiff of the premises described in the deed, and further to restrain defendant from otherwise conveying or encumbering these premises. The bill also prays for general relief.

Defendant in his answer avers that his agreement was to support and maintain Wesley Metzger in the same condition in which he was living at the time at the instance and request of Wesley Metzger in the agreement was signed. He avers that he moved into the premises at 1200 North Fourteenth Street January 1945, and thereafter furnished all the food and paid one half of the gas, electricity, fuel, telephone and repairs in and for the property. He avers that he paid no taxes for the reason that Wesley Metzger, who is his half-brother, would not permit him to do so, and that Wesley Metzger would not permit him to pay any doctor bills; that until September of 1949 he paid all the rentals that he received from property No. 1202 North Fourteenth Street to Wesley Metzger. It is averred that his agreement was to provide necessary support and maintenance under living conditions such as Wesley Metzger was

then enjoying; and that the conveyance of the premises to defendant was primarily because of natural love and affection which Wesley Metzger bore to defendant.

Defendant avers that the conditions necessitating the employment of nurses were entirely different and changed from those existing at the time the contract was executed, and that it was not in contemplation of the parties that defendant should furnish such services. Defendant avers that he has now been requested to pay the expenses of Wesley Metzger at the Harrisburg State Hospital, but contends that he is not liable for such maintenance and support. It is further averred that plaintiff has no standing in law or equity to maintain the bill in equity against defendant.

### Findings of Fact

1. Wesley Metzger is a widower and was born on December 28, 1866.

2. Defendant, Newton S. Metzger, now residing at 1202 North Fourteenth Street, Harrisburg, Pa., is a half-brother of Wesley Metzger.

3. Mrs. Stella Wilt is the adopted daughter of Wesley Metzger.

4. In January 1945 Wesley Metzger was the owner of certain premises known as 1200 North Fourteenth Street, Harrisburg, Pa., and was also the owner of other premises known as 1202 North Fourteenth Street, Harrisburg, Pa.

5. In January of 1945 Wesley Metzger was living alone at his property 1200 North Fourteenth Street, and during that month defendant, Newton S. Metzger, and his wife, moved into the premises to live with Wesley Metzger on the latter's invitation.

6. Wesley Metzer's wife had died about two and one-half years prior to January 1945.

7. On August 6, 1948, Wesley Metzger executed a deed for premises situated at 1202 North Fourteenth Street to defendant herein, and at the same time executed contemporaneously therewith with defendant a written agreement, under the terms of which defendant agreed "to keep, support and maintain my brother, Wesley, so long as he shall live; and to provide for him necessary care and maintenance under living conditions such as he now enjoys."

8. Defendant and his wife had lived at the house of Wesley Metzger at 1200 North Fourteenth Street from January 1945 until August 6, 1948, when the deed and contemporaneous agreement were executed.

9. The deed and agreement were executed in the office of Wesley Metzger's attorney, and the agreement was executed at the suggestion of Wesley Metzger's attorney.

10. At the time of the execution of the agreement defendant was providing the meals for Wesley Metzger, and defendant's wife did the cooking; she did the washing and ironing, cleaned the house, and for two years prior thereto had prepared special foods for Wesley Metzger.

11. The deed dated August 6, 1948, was recorded in the office of the Recorder of Deeds in and for Dauphin County in Deed Book P, vol. 31, page 526.

12. On August 6, 1948, Wesley Metzger showed signs of advancing age and was in need of frequent medical care.

13. In June 1949 Wesley Metzger made a deed for premises 1200 North Fourteenth Street to himself and Stella Wilt as joint grantees.

14. A joint bank account was opened in March 1949 in the names of Wesley Metzger and Stella Wilt at the Allison-East End Trust Company, the funds for which account were made up of Wesley Metzger's life savings.

15. From the date of the execution of the deed for premises 1202 North Fourteenth Street on August 6, 1948, to this defendant, defendant paid the rental received therefrom to Wesley Metzger through August 1949, and in September 1949 paid one month's rental to Stella Wilt.

16. Although on August 6, 1948, Wesley Metzger was somewhat infirm physically, particularly in his legs, he was not then in any way of unsound mind.

17. After August 6, 1948, defendant and his wife continued to live with Wesley Metzger at 1200 North Fourteenth Street, and the arrangements were satisfactory between the parties.

18. Defendant continued to furnish the food, and his wife likewise prepared the meals, did the cleaning, washing, ironing, and provided general household services.

19. Subsequent to August 6, 1948, and during the year 1949, Wesley Metzger's physical condition showed signs of further deterioration, which necessitated considerable extra work on the part of defendant and his wife.

20. On February 3, 1949, Mrs. Wilt accompanied Wesley Metzger to certain offices of the Pennsylvania Railroad in Harrisburg, where Wesley Metzger changed the beneficiary in his relief benefits from defendant to Mrs. Wilt.

21. During the year 1949 and until September 9th of that year, defendant and his wife looked after Wesley Metzger in his own home at 1200 North Fourteenth Street.

22. There were frequent visits by doctors, and Wesley Metzger paid his own doctor bills down to September 9, 1949.

23. The bills for some of the expenses in connection with the home, such as telephone, light, heat, taxes, were paid either wholly or in part by Wesley Metzger.

24. In the summer of 1949 Wesley Metzger's mental condition became impaired, which impairment manifested itself in or about July of that year.

25. From the time of the first manifestation of this mental illness, such illness increased, and there was also an increase in Wesley Metzger's physical infirmities.

26. On September 9, 1949, on the insistence of defendant, Stella Wilt hired two practical nurses to look after Wesley Metzger in his own home, and defendant's wife then continued to do the cooking, furnished the meals, and generally did the household work.

27. A dispute arose between defendant and Stella Wilt as to who should pay for these nurses, and Mrs. Wilt paid for the nursing and medical care out of the joint account at the Allison-East End Trust Company.

28. Between the dates of September 9, 1949, and December 13, 1949, Stella Wilt paid the sum of $1,353.49 for nursing and medical care.

29. The fair market value of premises 1202 North Fourteenth Street on August 6, 1948, was $8,000.

30. Plaintiff was appointed guardian of the estate of Wesley Metzger, a weak-minded person, on November 16, 1949.

31. Wesley Metzger was committed to the Harrisburg State Hospital on December 13, 1949.

32. Plaintiff has paid no part of the sum of $1,353.-49 expended for nursing and medical care during the period of September 9, 1949, to December 13, 1949, nor for maintenance at the Harrisburg State Hospital.

33. The gross monthly income now being received by plaintiff is $145.52, and the monthly cost of maintenance of Wesley Metzger at the Harrisburg State Hospital is $51.

## Discussion

Plaintiff in this case contends that the consideration for the execution of the deed to premises 1202 North Fourteenth Street was the written contract for the support and maintenance of Wesley Metzger by defendant. It is its contention that a family relationship existed, and that defendant breached his contract by failure to pay for nursing and medical care from September 9, 1949, to December 13, 1949, and also by his refusal to pay for support and maintenance of Wesley Metzger at the Harrisburg State Hospital. It is claimed that because of this breach there was a failure of consideration and the court should therefore cancel the deed of August 6, 1948, by which the premises were conveyed, and decree reconveyance of the property.

The general rule is that a deed which is otherwise valid will not be invalidated by reason of a total or partial failure of consideration: Shook v. Bergstrasser et ux., 356 Pa. 167 (1947). When, however, a deed is given in consideration for support and maintenance where a family relationship exists, equity may, upon grantee's failure or refusal to support in accordance with the promise, decree cancellation and rescission on equitable terms: Borys v. Halko et ux., 124 Pa. Superior Ct. 418 (1936) ; Dreisbach v. Serbass et al., 126 Pa. 32, 41 (1889) ; Ziegenfuss v. Ziegenfuss et ux., 160 Pa. Superior Ct. 374, 378 (1947) ; Swartz v. Hafer et al., 354 Pa. 320 (1946). In such case the agreement to support is considered as an executory contract, and where there has been a breach of that contract equity will decree in certain circumstances a reconveyance. A family relationship does exist in this case, since Wesley Metzger is shown to be a half-brother of defendant.

The question involved is whether the expenses of practical nursing in Wesley Metzger's own home, and

maintenance cost at the Harrisburg State Hospital were intended to be included in the agreement by which defendant promised to support and maintain Wesley Metzger.

The contract must be interpreted in the light of all the language used. The rule is stated in Philadelphia v. Philadelphia Transportation Company, 345 Pa. 244, 250 (1942), as follows:

". . . the entire contract should be read as a whole and every part interpreted with reference to the whole, so as to give effect to its true purpose: McMillin v. Titus, 222 Pa. 500, 502 (1909) ; Nusbaum v. Hartford Fire Ins. Co., 276 Pa. 526, 531 (1923) ; Harrity v. Continental-Equitable Title & Trust Co., 280 Pa. 237, 241 (1924) . . . 'the contract itself must be read in the light of the circumstances under which it was made' . . ."

And in Stierheim v. Bechtold et ux., 158 Pa. Superior Ct. 107, 110 (1945), it is stated:

". . . The entire contract should be read as a whole and every part interpreted with reference to the whole so as to give effect to its true purpose."

In the written contract of August 6, 1948, defendant agreed "to keep, support and maintain my brother, Wesley, so long as he shall live; and to provide for him necessary care and maintenance under living conditions such as he now enjoys". We must then interpret the contract in the light of the provision that defendant is to provide Wesley Metzger with "necessary care and maintenance under living conditions such as he now enjoys".

The crux of this case is whether defendant agreed to care for and maintain Wesley Metzger under substantially the same conditions as existed at the time the agreement was signed, or whether there was an absolute promise of future maintenance and support under any and all conditions. To determine this es-

sential question, we are bound to interpret the contract in the light of the circumstances and conditions existing at the time it was executed. The contract is not to be interpreted in the light of events that have transpired since its execution. In Tate v. Murphy, 202 Okla. 671, 217 P.(2d) 177 (1949), the Oklahoma Supreme Court said:

"In considering the adequacy of consideration in cases of this nature, it should be kept in mind that conditions existing at the time the contract is made are controlling. In the case of Maude Dingler, Respt., v. Noah Ritzius et al., 42 Idaho 614, 247 P. 10, the rule is announced by the Supreme Court of Idaho as follows: 'In contract to care for person until death, subsequent events cannot enter into fairness of contract or adequacy of consideration, since there is an element of uncertainty, and adequacy of consideration and fairness must be viewed from standpoint of time of its making.' "

And it is a well recognized rule that, in determining the meaning of a contract that is in any way indefinite or ambiguous, the interpretation placed thereon by the parties themselves is to be considered by the court. That interpretation is entitled to great and sometimes controlling influence in ascertaining their understanding of the agreement. In fact the courts will generally follow the practical interpretation of a doubtful contract. See Ziegenfuss v. Ziegenfuss, supra; Rochester and Pittsburgh Coal & Iron Co. v. Makoma Coal Co., 271 Pa. 394 (1921); Baker's Trust Estate, 333 Pa. 273 (1939); Monongahela Street Railway Co. v. Philadelphia Company et al., 350 Pa. 603 (1944); Cirotti v. Wassell, 163 Pa. Superior Ct. 292 (1948). The weight of the evidence indicates that the parties to this agreement placed their own construction on the contract with respect to the care which Wesley Metzger was to receive.

From the time defendant and his wife moved into the home at 1200 North Fourteenth Street in January 1945 defendant and his wife continued to provide food and care for Wesley Metzger until September 9, 1949, when it was necessary to employ nurses. Thereafter, defendant and his wife continued to furnish food and provided general household services for Wesley Metzger. The evidence indicates that until September 9, 1949, Wesley Metzger paid his own doctor bills, and that the bills for certain of the utilities, such as gas, electricity, fuel, telephone and repairs, were divided between defendant and Wesley Metzger. The evidence in our view shows that under the construction which the parties placed on their agreement, Wesley Metzger was to be cared for and maintained in his own home. He was living in his home at the time the agreement was made, and was then suffering some physical infirmity. And we feel that the parties intended that so long as those living conditions remained the same, care and maintenance should be supplied by defendant. It is interesting to note that defendant put on the witness stand Wesley Metzger's attorney who prepared this agreement, and who testified on cross-examination that defendant "agreed to provide for him (Wesley Metzger) as he was then being provided for". When Wesley Metzger's physical and mental condition became such that he required nursing attention in his own home, we are of the opinion that those nurses should have been provided by defendant under his agreement.

We do not believe, however, that under the wording of this agreement the parties intended that defendant should pay the support and maintenance charges at the Harrisburg State Hospital. We think the parties by their construction and conduct clearly showed that they intended that support and maintenance should be furnished in Wesley Metzger's own home. But we

can find nothing either in the agreement or in the conduct of the parties to indicate that they intended that defendant should be obliged to furnish maintenance and support to Wesley Metzger outside of the home and in some institution.

It is our view that the commitment of Wesley Metzger to the Harrisburg State Hospital constituted a radical change in the living conditions from those which existed at the time the agreement was made, and that such changed conditions were not in contemplation of the parties under the agreement. To hold that this agreement required maintenance at the Harrisburg State Hospital would require us to place a construction on the contract in the light of events that have transpired subsequent to the execution of the contract, rather than in the light of the conditions and circumstances existing at the time the contract was made. This we are not permitted to do.

We can find in Pennsylvania no cases that are precisely in point on this question. There is, however, an interesting case in Minnesota: Penas v. Cherveny et al., 135 Minn. 427, 161 N. W. 150 (1917). A parent in that case conveyed real estate to her son and contemporaneously therewith entered into an agreement with the son whereby he agreed to pay his brothers and sisters a certain sum of money, and to furnish the parent each year during her life certain provisions, and to furnish her certain rooms in the dwelling for the remainder of her life. The contract was one of support and maintenance. Subsequently the parent was declared insane and was committed to a hospital for the insane. It was held by the Supreme Court of Minnesota that during her detention in the hospital the provisions of the support agreement were suspended and could not be enforced by the incompetent's guardian. The court held that it was a personal agreement that did not inure to the benefit of the guardian.

We believe that our conclusion that defendant was obliged to furnish maintenance and care in Wesley Metzger's home, but not to maintain the latter at the Harrisburg State Hospital, comports with the existing equities in this case. Wesley Metzger showed a disposition to make certain provisions for his close relatives. The record shows that there were two persons for whom he had natural love and affection. One was defendant, to whom he deeded the premises in dispute. At the time of the conveyance, at the instance of his attorney, Wesley Metzger caused the agreement for maintenance and support to be executed in connection with this conveyance. The other person for whom he had affection as shown in this record was his adopted daughter, Mrs. Wilt. He deeded to her as joint tenant with himself premises 1200 North Fourteenth Street, where he was living until the time of his commitment. He had changed the beneficiary of his railroad benefits from defendant to Mrs. Wilt during the year 1949, and he had also opened a joint account in a local bank with Mrs. Wilt with his own savings. The evidence indicates that the monthly income of Wesley Metzger's estate now being received by the guardian amounts to $145.52, and that the maintenance cost at the Harrisburg State Hospital amounts to $51. We think the equities indicate that the estate should pay the maintenance at the Harrisburg State Hospital, but that defendant should pay for the nursing and medical care from September 9, 1949, to December 13, 1949, as part consideration for the valuable property which he received from Wesley Metzger.

In view of our interpretation of this contract, the failure to pay for the support and maintenance of Wesley Metzger at the Harrisburg State Hospital does not constitute the breach of an executory contract, and therefore in our opinion the equitable relief

which plaintiff seeks in the form of cancellation of the deed and reconveyance of the property cannot be granted. We do think that defendant's failure to provide nursing and medical care during Wesley Metzger's illness in his own home was a breach of his agreement. The evidence indicates that the costs incurred for nursing and medical care in the home of Wesley Metzger from September 9, 1949, to December 13, 1949, amounted to $1,353.49. It is true, of course, that an action in law would lie for this amount. Where, however, equity has jurisdiction of a case because of other remedies sought in the proceedings, the court may make a decree for the payment of money which might have been recovered in an action at law.

In Commonwealth of Pennsylvania, Department of Public Assistance, v. Smith et al., 344 Pa. 381 (1942), a bill in equity was brought at the instance of the Commonwealth to set aside a conveyance of real estate from one Elizabeth Smith to her son and his wife. The Commonwealth, through the Department of Public Assistance, had advanced to Elizabeth Smith the sum of $672 for old age assistance, and in the proceeding in equity it was claimed that the conveyance should be set aside on the ground that it was a fraud on the Commonwealth's right as a creditor of Elizabeth Smith, who was deceased at the time the bill was brought. The court below directed judgment to be entered in the sum claimed by the Commonwealth and decreed that the conveyance be set aside to the extent necessary to satisfy the judgment. The Supreme Court said at page 383:

"Complaint is made of the inclusion in the decree of a money judgment in favor of plaintiff. If, as here, equity has jurisdiction of a case because of other remedies sought in the proceeding, there is nothing unusual or objectionable in the court making a decree

for the payment of money which might have been recovered in an action at law. It is a familiar principle that, once equity jurisdiction is assumed, all matters connected with the subject-matter of the suit may and should be decided. Decrees in equity for the payment of money are recognized and provided for in the *Act of March 29, 1859, P. L. 289.*" (Italics supplied.)

See also Kiley v. Baker et al., 150 Pa. Superior Ct. 248, 252 (1942) ; Duc v. Struckus et ux., 345 Pa. 65, 68 (1942).

In view of the foregoing, we state the following

## Conclusions of Law

1. The agreement of August 6, 1948, provided that defendant should care for and maintain Wesley Metzger under living conditions which he was then enjoying.

2. The parties contemplated that the living conditions should be in the home of Wesley Metzger where the parties were living at the time the contract was signed.

3. The contract included nursing care for Wesley Metzger in his own home from September 9, 1949, to December 13, 1949, and also the medical expenses which were incurred during that period; but did not include care and maintenance of Wesley Metzger at the Harrisburg State Hospital.

4. There is no executory contract in this case to furnish support and maintenance for Wesley Metzger at the Harrisburg State Hospital, and hence cancellation of the deed of August 6, 1948, from Wesley Metzger to defendant and reconveyance of the property therein described cannot be decreed.

5. It should be decreed that defendant pay to the plaintiff the sum of $1,353.49 for nursing and medical care furnished to Wesley Metzger in his own home for the period from September 9, 1949, to December 13, 1949, and that such decree for the payment of money shall be and constitute a lien on the real estate of de-

fendant in the manner provided by the Act of March 29, 1859, P. L. 289.

*Decree Nisi*

And now, January 22, 1951, it is hereby ordered, adjudged and decreed that defendant pay to plaintiff the sum of $1,353.49, and that plaintiff shall have a lien against the real estate of defendant. All other relief as prayed for in plaintiff's bill is herewith denied, except that cancellation of the deed of August 6, 1948, recorded in Deed Book P, vol. 31, page 526, is ordered only to the extent necessary to satisfy plaintiff's lien as herein described. The prothonotary is directed to enter this decree nisi and notify the parties to this proceeding, or their counsel, forthwith. If no exceptions are filed within 10 days after the entry of this decree a final decree will be entered. The costs of this proceeding shall be divided equally between plaintiff and defendant.